HOME FIRE INSURANCE COMPANY V. WILLIAM FALLON.

FILED JUNE 19, 1895. No. 5882.

1. **Insurance:** APPLICATION: MISSTATEMENTS: ESTOPPEL. An insurance company is liable on its policy issued on a written application misstating the facts, where such misstatements were written in the application by the company's agent, the insured having correctly stated the facts and acted otherwise in good faith, not consenting to or knowing of the misstatement.

2. ———: SIXTY DAYS' LIMITATION OF ACTION: WAIVER. Where an insurance company, either before suit brought or by answer in the action, denies that the policy was in force when the loss occurred, it cannot avail itself of a provision in the policy that no action shall be brought until sixty days after receipt of proofs of loss and adjustment.

3. ———: AGENCY: EVIDENCE. Evidence set out in opinion *held* sufficient to establish an agency and also a denial of liability before action brought.

ERROR from the district court of Holt county. Tried below before KINKAID, J.

*A. S. Churchill*, for plaintiff in error.

*M. F. Harrington, contra.*

IRVINE, C.

The defendant in error was the owner of certain grain in a warehouse in O'Neill. The warehouse and grain were destroyed by fire January 6, 1892. The defendant in error held a policy of $1,200 in the Home Fire Insurance Company on this grain, and February 1, 1892, brought this action to recover on the policy. He obtained judgment, and the insurance company brings the case here on error.

Plaintiff in error argues in its brief several questions in regard to the admission of evidence. The only assignments of error relating to the subject are as follows: "2. For errors committed on the trial in the admission of the evidence of plaintiff as a witness on his own behalf and at the time duly excepted to by the defendant. 3. The court erred in refusing to strike out the evidence of the plaintiff as a witness upon the motion of the defendant upon his cross-examination, it having been shown by such cross-examination that such evidence was incompetent, to the overruling of which motion the defendant at the time excepted." These assignments are too general to present any questions to this court for review. They do not point out the particular rulings complained of. There were a great many objections overruled during the progress of the plaintiff's examination. There were three motions made to strike out his testimony during his direct examination after questions interposed by the defendant. There was none during his cross-examination proper, although the defendant itself interposed a number of "objections" during the cross-exami-

nation, which so-called "objections" were perhaps in the nature of motions to strike out his direct testimony.

The evidence showed that the policy was based on a written application signed by the insured, wherein, among other things, appeared the following interrogatories and answers: "The stock of merchandise. * * * Average value? $1,900. How often is inventory taken? Know at all times. Amount of last inventory? $1,950." One of the defenses pleaded was that these statements were false. The evidence showed that the insured was engaged in buying grain from a number of different persons down to the latter part of December, and that during the same period, and later, he from time to time shipped grain to Chicago. The evidence as to purchases and shipments is very voluminous, and we have not entered upon the calculation necessary to determine just what amount of grain was on hand at different times. Nor is there sufficient evidence as to the value from time to time to enable us to make such a calculation with any degree of exactness. For the purpose of considering the case, we shall assume that the company's contention is true, and that the evidence discloses that there was not $1,950 worth of grain on hand when the application was made, and that the average amount kept on hand did not reach in value $1,900. It seems that a Mr. Lyons was the company's agent at O'Neill. He signed the agent's certificate on the application, and he signed the policy. The plaintiff, however, testifies that he applied to James Harrington for the insurance, when he stated to Harrington the amount of grain on hand, but not its value; that Harrington inserted the answers to the questions in the application; that Fallon signed the application without having it read over to him, and without knowing that these representations as to value were contained in it. But evidence as to Harrington's relations to the company is very meager. Fallon speaks of him as the agent of the company, and there is certainly sufficient similarity in the handwriting in the

application, in the agent's certificate on the application, and in the body of the policy itself to warrant the jury in believing that it was all done by the same person. It appears that Harrington lived at O'Neill; it does not appear as stated in the company's brief that he had left the country. Both Lyons and the company's adjuster were on the witness stand, and do not contradict Fallon's statement that Harrington was an agent, nor his statement that the application was made to Harrington. Harrington seems to have been enough the company's agent to procure the policy to be issued. The company, on an application to Harrington, issued the policy and received the premium, and we think that, in the absence of any evidence to the contrary, the foregoing was sufficient to establish the fact of his agency for the company in writing policies.

The court instructed the jury, in effect, that the plaintiff could not recover if he authorized the statement as to the value of the grain, or if he knew when the application was delivered; that it contained such statement; but that the plaintiff was responsible for the statement if Harrington was not the agent of the company, or assisting or co-operating with Lyons. The court refused to instruct, at the request of the company, that unless the representations were substantially true there could be no recovery. The refusal of this instruction is assigned as error. To have given it would have bound the insured by the statements in the application, even if they had been made by the agent of the company without the consent or knowledge of the insured. This is not the law. Indeed counsel for the insurance company frankly admit " that there are many decisions holding that where a party applies to an agent for insurance, and correctly states the facts, the company is liable, although the agent may not write in the application the answers given by the insured." *State Ins. Co. of Des Moines v. Jordan*, 29 Neb., 514, recognizes this principle. It is true that in that case it appeared that the in-

sured was unable to read.    But we do not think the distinction in the cases material.    When the insured states the facts correctly to the company's agent, he is not bound to exercise vigilance thereafter to determine whether the agent is exercising care or good faith in his transactions on behalf of the company.    In other words, the company is estopped from seeking to avoid its contract because of a mistake or fraud committed by its own agent, the insured having acted in good faith, although, perhaps, somewhat negligently.

In this connection it is also argued that the court erred in permitting the plaintiff to amend his pleading so as to introduce this issue in the case.    But there is no assignment of error reaching this point.

The policy contained a provision that the loss should be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss had been received by the company, and that no action should be maintained within that time. · This suit was brought in less than thirty days after the fire.    The jury found specially that prior to the commencement of the action the company had denied all liability upon the policy.    It is clearly the law that such denial of liability prevents the company from insisting on this provision. (*Hoffecker v. New Castle County Mutual Ins. Co.*, 5 Houst. [Del.], 101; *Allegre v. Maryland Ins. Co.*, 6 H. & J. [Md.], 408; *State Ins. Co. v. Maackens*, 38 N. J. Law, 564; *Williamsburg City Fire Ins. Co. v. Carey*, 83 Ill., 453; *Cobb v. Ins. Co. of North America*, 11 Kas., 93; *California Ins. Co. v. Gracey*, 15 Col., 70.)    The company, however, while tacitly recognizing this principle, contends that the proof was insufficient to sustain the special finding of the jury.    The plaintiff testifies that he gave immediate notice of loss to the company; that sometime afterwards he was accosted by one Denman, who is shown to be the company's adjuster, and after some talk about the fire, Denman said, to use Fallon's language, "He was onto me;" that he had been in O'Neill several days investigat-

ing the matter, and had affidavits of thirty-two men to prove that there was not the amount of grain there which was claimed, and that Fallon had left for the purpose of having the building burned, and he also told Fallon that the latter knew who did burn the building, and that he afterwards made the proposition "that if you let this case go by —if you would not bother with the Home Fire Insurance Company—I will give you the affidavits of these thirty-two men to show who are your friends." Fallon met him again and asked him "Will you admit that I had any loss?" He said, "I will if you will admit that Mr. Hayes had an interest in the property." According to the terms of the policy this fact, if established, would defeat a recovery. On the 12th day of January Fallon executed an affidavit in the nature of proofs of loss. This affidavit stated "that the property destroyed and its cash value was as follows:

  481 bushels of rye, worth............$322.27
  870 bushels of oats, worth............ 174.00
  477 bushels of corn, worth.......... 119.25
  748 bushels of wheat, worth......... 501.16

that all of said property was insured by said policy, and was totally destroyed; that there were no incumbrances on said property, and that there was no other insurance on said property, that he was the only person who occupied the building described in said policy, and in which the property destroyed by said fire was situated at the time of the fire." It was after this proof was furnished that the adjuster appeared. The policy required that the proofs should state, among other things, the "cash value of each item thereof [meaning the property destroyed], and the amount of loss thereon. * * * Any change in the title, use, occupation, location, position, or exposures of said property since the issuing of this policy. By whom, and for what purpose any building herein described and the several parts thereof were occupied up to the time of

the fire." So far as we can see, the proofs furnished by Mr. Fallon answered these requirements. But the company returned them for the very absurd and untenable reason "that they do not show the market price of the various kinds of grain at O'Neill, Nebraska, claimed to have been damaged or destroyed by said fire, nor the purpose for which the building containing such grain was used." It is true that this last letter was not written until after the suit was brought, but it indicates the disposition of the company in regard to the loss. The adjuster demanded an inspection of Fallon's books and papers. Fallon testifies that he said he would submit them for examination if liability under the policy were admitted. The adjuster would not admit liability, but insisted upon ascertaining the amount of the loss before doing so. In one letter from the company Mr. Fallon is told that it is absurd in him to assume that the company must admit liability before ascertaining whether any liability exists. This hardly states Mr. Fallon's position correctly. The absurdity was rather in the company's insisting upon examining Mr. Fallon's private accounts without admitting a contractual relation with him which would justify such an examination. On the whole evidence there can be no doubt that what had occurred prior to the bringing of the suit was sufficient to convey to Mr. Fallon the information that the company did not intend to pay the loss. It justified the jury in reaching the same conclusion, and we think the special finding was amply supported. It has been held that when a company denies liability on the ground that the policy was not in force when the loss occurred, this is a waiver of all requirements as to notice or proofs of loss. (*Phenix Ins. Co. v. Bachelder*, 32 Neb., 490; *Omaha Fire Ins. Co. v. Dierks*, 43 Neb., 473, 569; *German Insurance & Savings Institution v. Kline*, 44 Neb., 395; *Dwelling-House Ins. Co. of Boston v. Brewster*, 43 Neb., 528.) So held where the denial of liability is contained in the answer, and was not made before action

brought. (*Omaha Fire Ins. Co. v. Dierks, supra.*) The reason of this is that the company cannot be permitted at the same time to say that the policy was not a valid and existing contract, and claim privileges derived only under the contract. We think the same principle applies to this case. The company showed by the action of its agent before the suit was brought that it was endeavoring to escape liability, and intended to avoid its obligations if possible. When sued it pleads that the policy was procured through misrepresentation, and was, therefore, not a valid contract. As said by Judge Brewer in the Kansas case already cited, the sixty days provision is merely a contract for credit, and the company certainly cannot avail itself of a provision for such credit when that provision is a part of a contract which the company claims is not in force.

JUDGMENT AFFIRMED.