(92 App. Div. 601.)

LOOMIS et ux. v. JEFFERSON COUNTY PATRONS' FIRE RELIEF ASS'N.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. INSURANCE—MUTUAL COMPANY—ACTS OF DIRECTORS—PAROL INSURANCE.

Plaintiff was insured by defendant, which was a mutual insurance association, requiring the policy holders to be members of a local grange, and to pay assessments and specified premiums. The association's by-laws provided that its directors should have blank applications in their custody, to be signed by applicants for insurance, which applications the directors were required to approve, and declared that the president and secretary of the association should have power to issue policies at any time on property insured "by any directors," provided that such applications met the requirements of the acts under which the association was incorporated, and its by-laws. *Held*, that one of defendant's directors had authority to make an oral contract insuring a member pending action on his application.

**2. SAME—REJECTION.**

Plaintiff held a policy in defendant mutual insurance association, and, being informed by one of defendant's directors that the policy was about to expire, made a new application, and paid a portion of the premium for another policy. Such policy was issued, but was never delivered to plaintiff; and thereafter the director, on ascertaining that the previous policy had not expired, as he had believed, canceled the subsequent policy, and retained the premium, agreeing that it should be applied in payment of a new policy, which he agreed to issue on the termination of the old policy. When such policy expired, an application for a new one was made out, which was returned by defendant for correction only; and, after plaintiff had sustained a loss, the application was corrected, under direction of the director, and returned, when it was rejected. *Held* that, since the director had authority to make temporary insurance contracts, defendant by such rejection could not escape liability for the loss.

**3. SAME—REPRESENTATIONS—OWNERSHIP OF PROPERTY—KNOWLEDGE OF AGENT —ESTOPPEL.**

Where the director of defendant mutual insurance association had full notice that the title to plaintiff's farm, on which the buildings insured were located, was in plaintiff and his wife, defendant was estopped to claim nonliability for an alleged misstatement of interest written by the director in the application, implying that plaintiff was the sole owner of the property.

**4. SAME—MORTGAGEE'S INTEREST—ASSIGNMENT OF POLICY.**

A by-law of a mutual insurance company, providing that a policy may, at the request of the insured, be indorsed payable to the mortgagee as his interest may appear, is not obligatory, and hence a failure to do so does not relieve the insurer from liability.

Appeal from Special Term, Jefferson County.

Action by William A. Loomis and wife against the Jefferson County Patrons' Fire Relief Association. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

The plaintiffs are the owners of a farm in the town of Champion, in the county of Jefferson; and the defendant is a co-operative fire insurance company, restricted in its business to the counties of Jefferson and Lewis, and incorporated pursuant to chapter 362, p. 540, Laws 1880, as amended particularly by chapter 573, p. 801, Laws 1886. Every applicant for insurance must be a member of one of the local granges of defendant, and is liable to the payment of assessments to meet losses and expenses. The plaintiffs had become members of the defendant in 1890 by receiving a policy of insurance upon the buildings on their farm. This policy, bearing date November 24, 1890, by its terms expired November 24, 1895, and at its expiration a renewal policy was issued for five years. The soliciting agents of the defendant were its directors, and there was a director named Babcock all this time living in the vicinity of the plaintiffs, and to whom the applications for these policies were made. In January, 1900, Babcock informed the plaintiff William Loomis, in whose name the policy was running, that it had expired; and a new application was made, and a portion of the premium paid, and another policy issued, in form like its predecessor, but it never was delivered to Loomis. Later Babcock learned that the policy issued in November, 1895, had not yet expired, and the one of January was canceled, although this did not occur until several months had elapsed from the date of its issuance; the precise time being in controversy, and is unimportant. In any event, when Mr. Loomis learned of it, he and Babcock agreed that the premium already paid—and in the meantime he had paid the balance—should be applied in payment of the new policy which it was arranged should be issued in November, 1900, upon the termination of the existing policy. On that day Mr. Loomis went to the home of the director and applied for a renewal of the policy, and an application was filled out by Mr. Babcock, and which Loomis says he signed, although that question is in dispute, and will be

adverted to later. On the same day, which was Saturday, Babcock took the application to Watertown, intending to deliver it to the defendant's office, but found it closed. He returned with the application, and mailed it to the defendant the succeeding Monday, and it was received on Tuesday morning, the 27th. It was returned to Babcock by the secretary for correction: First, to have it signed by the applicant; and, second, to have the loss, if any, payable to the mortgagee as his interest may appear. Babcock was absent from home at the time the application arrived, and did not return until Saturday. On Sunday he went with the application to the respondents, and it was signed by Mr. Loomis, and the name of the supposed mortgagee inserted in his stead, and the application was left with Loomis to forward to the defendant, and the application was subsequently rejected. Early in the morning of November 27th, and before the return of the application to Babcock by the defendant for correction, the barn described in the policy was wholly destroyed by fire; and the extent of the liability of the defendant, if liable at all, was stipulated upon the trial. The defendant's secretary testified that when he returned the application he had not learned of the fire. Mr. Loomis wrote to the secretary on the 27th, informing him of the burning of the barn and its contents. Further facts appear in the opinion.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Joseph Atwell, for appellant.
W. B. Van Allen, for respondents.

SPRING, J. This action was brought on the oral agreement made by Babcock, the director, when he informed Loomis that the policy of January 24th was ineffective because the preceding policy was still in force. The plaintiff testified that the director said, in substance, that he would attend to it; and this is, in effect, corroborated by Babcock. The full premium was retained by Babcock for the purpose of meeting the premium on the new policy. The application was not returned to the plaintiffs, but was retained by the defendant. It seems clear that it was expected by the parties that the insurance was to be continued, and, if nothing further had been done, Loomis had the right to expect the issuance of a new policy upon the termination of the one issued in November, 1895. Loomis, however, did go to Babcock in the forenoon of the day that the old policy was to run out for the purpose of attending to its renewal. If we assume, as Babcock and his wife testified, that the application was not signed by the applicant, we are still of the opinion that the property was insured. That was the intention of the parties. The scheme of insurance was the mutual plan, and involved membership in the local grange, the payment of assessments, and also a specific premium for the particular policy issued, and which was graded according to the amount insured. Section 2 of by-laws. Babcock, as a director, had in his custody blank applications to be signed by the applicant who came to him for insurance with defendant (section 5), and it was for him to approve the application before the policy was issued (section 4). Section 13 provides:

"The president and secretary shall have power to issue policies at any time on property insured by any directors, providing such application meets the requirements of said acts and these by-laws."

That is, the director takes the application and makes the contract of insurance, but its formal confirmation by the issuance of a policy

rests with the two officers named. There does not seem, by the by-laws, to be lodged with these officers the unqualified authority to turn down an application which has received the sanction of a director. Of course, this could be accomplished in conjunction with that director, or by the action of the board of directors. But assuming that the home officers might eventually reject the application, until this was done the agreement of Babcock was valid, and the insured was entitled to the protection intended thereby. Babcock did not possess the authority to issue, in form, a written policy binding on the defendant. The written application must be accepted by the defendant before the policy was issued, and thereupon it became valid from its date. The director, however, did have authority to make a valid agreement on behalf of the defendant to insure the property until the defendant took definite action on the application. If a loss occurred in the meantime, the defendant must pay. If, upon receipt of the application, it learned that the buildings insured had been destroyed by fire, it could not allow that fact alone to induce the rejection of the application. When the application was received by it on November 27th, it did not reject it or refuse to issue the policy. It returned it for specific corrections, implying that, upon these being made, the issuance of the policy would follow, and it would be operative from the date of the application. The construction placed upon the agreement by Babcock was obviously one of absolute insurance, for he presented the application to Mr. Loomis for his signature and correction five days after the burning of the buildings. This action was significant, in that it recognized the existence of the contract of insurance. It would have been a mockery for Babcock to go through the performance of correcting this application, and having it re-signed, if he did not understand that by his acts the defendant had become liable for the loss of this property. He was more than an ordinary soliciting agent. His position as director of the defendant, with blank applications in his custody, and with the duty to approve the applications, invested him with authority as one of the executive officers of the defendant.

Inasmuch as the plan of insurance contemplated a written application, it is insisted that no oral contract could be made, as this, in effect, would override the requirement of an application in writing. In answer to this, it may be said that there is nothing in the by-laws inhibiting a director from making an agreement for temporary insurance to be valid until the action of the home officers. In Hicks v. British American Assurance Company, 162 N. Y. 284, 56 N. E. 743, 48 L. R. A. 424, the agent of the defendant said to the applicant for insurance, "You are insured from noon on the 30th of December, 1893, to noon December 30, 1894." The court held this was a binding agreement for insurance, embracing within it the provisions of the standard policy. In Squier v. Hanover Fire Insurance, 162 N. Y. 555, 57 N. E. 93, 76 Am. St. Rep. 349, the local agents of the defendant at Jamestown had authority, by their certificate of appointment, "to countersign, issue, and renew policies of insurance." About 10 days before the expiration of a subsisting policy issued by the defendant, the said agents agreed orally with the husband of the plaintiff, and who represented her, that the policy would be renewed

at its expiration, and plaintiff was to pay the premium within 30 days and get the policy. The old policy expired December 20, 1894, and the property was destroyed by fire December 29th, and no new policy had been issued. The plaintiff recovered the amount of the insurance, and the Court of Appeals upheld the recovery. In Van Loan v. Farmers' Mutual Fire Ins. Association, 90 N. Y. 280, the applicant applied to a director for insurance, paying the required sum. The director made the survey and notified the company, but the matter was held in abeyance for the reason that the policy was to be made out in the name of the wife of the applicant, and her first name was unknown. A fire occurred in the meantime, and the defendant was held liable. These cases are decisive of the present one, so far as this aspect of the case is concerned. In fact, the situation is far stronger here, for the plaintiffs, for there was an application in writing prepared in January, which was withheld by the defendant, and there was at least an attempt honestly made to prepare another, and there was no formal rejection of it. In addition to these circumstances are the acts of Babcock, tending strongly to corroborate the position of the plaintiffs.

So far, we have assumed that the last purported application was not signed by Loomis. There was proof tending to show he did in fact sign it, but we are free to add that, if to uphold the recovery depended on agreeing with the jury on that proposition, we should have some hesitancy in doing so. On the practically undisputed testimony, however, we think the circumstances show an agreement—a plain understanding—that the property was insured at the time it was burned.

In each written application, Loomis answered the inquiry as to his title or interest by the word "deed," implying that he was the sole owner of the property. Loomis and his wife testified that they informed Babcock they owned the farm jointly, which is the fact, and supposed he so stated in the application. The jury have found with the plaintiffs on this question. So Babcock, the director, possessed full notice of the ownership of the property.

In the last attempted application, Loomis stated that the premises were incumbered to the extent of $1,800, but did not give the name of the mortgagee. This form was followed in the preceding applications, and no dissent was made by the defendant. By section 13 of the defendant's by-laws it is provided that the "policy may at the request of the insured be endorsed * · * * payable to * * * mortgagee as h—— interest may appear." It is not obligatory, and certainly the failure to do so does not relieve the defendant from liability.

We do not deem it important to discuss the other exceptions urged by the appellant. The real mortgagee assigned her interest in the policy to the plaintiffs. The judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.