E. HENRY SCHNELL, APPELLEE, V. UNITED HAIL INSURANCE COMPANY, APPELLANT.

18 N. W. 2d 112

FILED MARCH 23, 1945.   No. 31814.

*C. M. Skiles,* for appellant.

*Morrow & Miller, contra.*

Heard before SIMMONS, C. J.,PAINE, CARTER MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

This is a law action in which plaintiff sought recovery from defendant upon an alleged contract of hail insurance for loss resulting from damage to his growing wheat, barley and bean crops. Jury was waived and the cause tried and submitted upon its merits to the district court for Banner county, Nebraska, whereupon certain findings were made and plaintiff was awarded a judgment for $330.92. Defendant's motion for new trial was overruled and it appeals, contending that there was no insurance contract between plaintiff and defendant; that if there was such a contract plaintiff's action was prematurely brought; and that the judgment is contrary to law, not sustained by the evidence, and in excess of the amount claimed in plaintiff's petition. Plaintiff did not attack the judgment by motion for new trial or otherwise in the district court. However, in this court he assigns what is called "cross-errors", contending that we should affirm the case but correct the judgment and make it for a greater amount because the trial court erroneously found that a 10 per cent deductible clause should be operative upon damages to plaintiff's bean crop, and erroneously allowed defendant an offset for the face amount of plaintiff's premium note instead of a lesser sum. Plaintiff's position is that the facts in connection therewith are

undisputed and that the judgment may be judicially corrected by a simple mathematical calculation. After considering all of these contentions made by the parties we decide that they cannot be sustained and that the judgment of the trial court should be affirmed.

We will first dispose of plaintiff's alleged "cross-errors". With reference to the offset, an examination of plaintiff's petition discloses that to establish an existing and enforceable contract of insurance plaintiff pleaded that he executed and delivered to defendant his promissory chattel mortgage note for the sum of $157.69 which was accepted in payment of premium for the insurance contract. A copy of the alleged contract which is attached to and made a part of plaintiff's petition likewise so recites. A copy of the premium note for that amount due October 15, 1942, with interest at 8 per cent from that date, no part of which had been paid, is also attached to and made a part of plaintiff's petition. Defendant in its answer prays that, if the court should find defendant liable, the amount of the premium note with interest be offset against plaintiff's recovery. Plaintiff in reply to defendant's answer pleads that defendant's acceptance and retention of the premium note given by plaintiff to defendant estopped it from denying liability upon the contract. It will be readily seen therefore that the amount of the note was not an issue in the case and the trial court correctly offset against plaintiff's recovery the amount thereof, $157.69, with interest at 8 per cent from October 15, 1942.

An examination of the pleadings and the evidence discloses that the question whether the 10 per cent deductible clause applied to plaintiff's bean crop was not undisputed but a question of fact for the trial court to decide. In this connection we find that it was a matter of substance as distinguished from form and inherent in the verdict. We have held that, "In an action at law the findings of the district court on issues tried have the effect of a verdict, where a jury is waived by the parties." *Palmer v. Schaber,* 141 Neb. 138, 2 N. W. 2d 923. In *Swygert v. Platte Valley Public*

*Power and Irrigation District,* 133 Neb. 194, 274 N. W. 492, it was held: "As a general rule, courts do not amend or correct verdicts in matters of substance after discharge of the jury, but this does not prevent corrections with respect to clerical errors or formal matters and the elimination of interest which the law forbids." It was said in *Cerny v. Paxton & Gallagher Co.,* 83 Neb. 88, 119 N. W. 14: "The statutes regulating the course of procedure do not specifically provide for setting aside a verdict in part. On the contrary, the remedy provided for errors committed during a trial, as prescribed by section 314 of the Code, (now section 25-1142, R. S. 1943) is a new trial." See, also, *Bielfeldt v. Grand Island Transit Co.,* 123 Neb. 368, 243 N. W. 76. The applicable rule is appropriately stated in 64 C. J., sec. 899, p. 1099: "As a general rule where the determination of the amount of recovery is exclusively within the province of the jury the court has no power to amend the verdict by increasing the amount found by the jury; * * * ." By analogy of course this court has no power to do so upon appeal. Authorities relied upon by plaintiff are clearly distinguishable from the case at bar. It follows that this court cannot summarily correct the judgment or direct the trial court to do so.

Defendant contends that it had no contract of hail insurance with plaintiff because its agent had no authority to insure bean crops or issue a policy with a bean endorsement thereon; that no policy was ever issued to plaintiff; and that defendant notified him promptly upon receiving the application for insurance that he was not insured or protected by the company. It is admitted in the answer that defendant was authorized to insure growing crops in this state against loss by hail and that the agent who took plaintiff's application was its agent to solicit such insurance. The record discloses that on May 25, 1942, the agent called upon plaintiff at his farm and procured from him an application for hail insurance upon plaintiff's growing wheat, barley and bean crops described therein upon certain conditions and for a prescribed amount during the period of

one crop season. The application provided in part: "This application for insurance shall become effective on the first 12 o'clock noon succeeding twenty-four (24) hours after such application has been properly executed, in the presence of the Company's agent, and addressed to the Company at its Home Office and placed in, and postage stamp cancelled by, any United States post office and to be governed by the articles of incorporation and by-laws printed on the policy issued by the Company." Thereafter follow provisions for adjustment of loss after the application became effective as insurance, a description of the crops insured, the amount thereof, and other relevant matters. Defendant's agent wrote the necessary information in the blank spaces and read the application to plaintiff who signed it. Defendant's agent then signed as witnessing the execution of the instrument. At the same time plaintiff executed and delivered to defendant's agent his promissory chattel mortgage note payable to defendant and witnessed by the agent, in payment of the insurance premium. Both the application and premium note were delivered to the agent who mailed them to the company. Defendant admits that they were received on June 1, 1942, and retained by it at all times thereafter. However, no policy was delivered to plaintiff before he suffered the loss by hail storm on July 19, 1942.

The agent did not testify and we find no evidence in the record or authority of law, statutory or otherwise, which would justify a finding by the court that defendant or its agent had no authority to insure bean crops. It is admitted that on June 1, 1942, when it received the application the defendant had authority from the Department of Insurance to insure bean crops and attach a 10 per cent deductible clause as a part of the policy. That plaintiff acted in good faith when he executed the application cannot be questioned, and we find no evidence in the record that would justify a finding that plaintiff had either actual or constructive notice of any limitation upon the authority of defendant's agent to take plaintiff's application in the manner and form in which it was executed.

It was held by this court in *Clark v. Bankers Accident Ins. Co.*, 96 Neb. 381, 147 N. W. 1118: "Ordinarily, it is within the power of an insurance agent to make an oral contract of insurance, or to agree that the insurance shall be in force after the application is signed, and the premium. paid, and before a policy is actually written, unless the assured is, or should be held to be, apprised in some manner, either in the application or otherwise, that the insurance will not be in force until the application is approved at the home office and the policy issued and delivered." Also, it was said in *Cline v. Fidelity Phenix Fire Ins. Co.*, 113 Neb. 481, 203 N. W. 578: "The rule is well settled that an insurance company is bound by all acts, contracts or representations of its agent, whether general or special, which are within the scope of his real or apparent authority, notwithstanding it is in violation of private instructions or limitations upon his authority, of which a person dealing with him, acting in good faith, has neither actual nor constructive knowledge." See, also, *Rankin v. Northern Assurance Co.*, 98 Neb. 172, 152 N. W. 324; *Whitehall v. Commonwealth Casualty Co.*, 125 Neb. 16, 248 N. W. 692.

Section 44-102, R. S. 1943, defines insurance. In the case at bar the application itself was in effect the policy of insurance. It contained all the necessary elements of a policy for hail insurance including the time that it should be in full force and effect to protect the plaintiff and bind the defendant in the same manner as if called a policy of insurance. It is effective as such whether a policy so-called was ever issued or not unless the application was rejected or canceled by defendant in some appropriate legal manner. Defendant contends that the application was rejected by its letter to plaintiff dated June 1, 1942. If this letter purports to be a notice of cancellation it was not sent by registered mail as provided by section 17 of defendant's bylaws, and the trial court found that if such a letter were ever written plaintiff did not receive it. We do not deem it necessary to recite the evidence in that connection but find that since there is very credible evidence to sustain such a finding it will not be disturbed by this court.

Further, after receiving plaintiff's application and premium note on June 1, 1942, defendant wrote to plaintiff on June 14, 1942, in part as follows: "We thank you for your hail insurance and the time payment of your premium note has been approved and is satisfactory to this company. We have, and shall endeavor to help you save money on your insurance and give you good service." After offering plaintiff a 10 per cent discount for cash payment of his premium note, the letter concluded: "Assuring you that we appreciate having your good name added to our 1942 policyholders and with best personal regards, we remain, Sincerely yours, United Hail Insurance Company, C. Fullagar."

On July 13, 1942, plaintiff wrote defendant acknowledging receipt of the above letter and inquiring about his policy of insurance. Defendant replied to this letter on July 14, 1942, advising plaintiff, among other things, "that in order to complete your application for hail insurance we must have the enclosed Bean Endorsement signed by you. * * * Thanking you for an immediate reply enclosing this endorsement, we remain, Yours truly, United Hail Insurance Co., K. C. Knudson." Plaintiff admitted receipt of this letter by him but denies that there was any bean endorsement enclosed. This letter could not be said to be a rejection or cancellation of the application. In any event, defendant at all times retained plaintiff's note in its possession, never tendering it back to him, as it should have done, until after the loss, which tender he then rightfully refused.

In *Moore v. Washington National Ins. Co.*, 135 Neb. 29, 280 N. W. 221, the court said: "A policy of insurance can be canceled under the provisions of the statute, or according to the provisions of the policy. Recently this court said: ' "Where a valid contract of insurance has been effectuated, the company cannot cancel the policy without consent of insured, except where it may be permitted to do so by statute or by a reservation in the policy itself. Such a reservation is valid, but, under the general rule, it will be strictly construed against the company." 32 C. J. 1245.' *Petersen v. Ohio Casualty Ins. Co.*, 131 Neb. 128, 267 N. W. 393. At

about the same time we said: 'Except as a right of cancelation of an insurance policy is provided for by statute, or reserved in the contract, neither the insured nor the insurer can effect a cancelation without the consent of the other, * * * such cancelation can be effected only by a strict compliance with the terms and conditions provided therefor by the contract and by statute.' *Sanks v. St. Paul Fire & Marine Ins. Co.*, 131 Neb. 266, 267 N. W. 454. In the previous case cited, *Petersen v. Ohio Casualty Ins. Co., supra*, it was stated: 'The burden of establishing an effective cancelation before loss is on the insurer. Notice of cancelation must be in accord, and in substantial compliance, with the provisions of the policy relating thereto, and be peremptorily explicit and unconditional.' " We find no provision either in the statutes or the contract involved and none has been called to our attention permitting defendant to reject or cancel plaintiff's contract without proper and timely notice thereof and without also tendering the return of his premium note. In the final analysis it is fundamental that defendant could not, with full knowledge of the facts, receive and retain the fruits of its agent's contract with plaintiff until after his loss and then deny that the agent had authority to make the contract. 3 Thompson, Corporations (3d ed.) sec. 2071, p. 698.

It is conceded that plaintiff filed this action on August 21, 1942. Defendant insists that plaintiff's action was prematurely brought under its bylaws which are a part of plaintiff's contract. Section 18 of the bylaws provides: "Insurance for the crop season on small grain shall expire at 12 o'clock noon on August 20th, * * * and all losses shall be due and payable within ninety (90) days thereafter." While plaintiff here denies that the bylaws are a part of his contract we find that the application upon becoming effective as insurance was "to be governed by the articles of incorporation and bylaws printed on the policy issued by the company." This court has held that, "When an assessment hail insurance company is organized under the laws of this state, the provisions of the statute authorizing its organiza-

tion, the articles of incorporation, the by-laws of the company, the application for membership, and the policy issued thereon constitute the contract between the company and the assured." *Jensen v. Lincoln Hail Ins. Co.*, 125 Neb. 87, 249 N. W. 94. Of course, if the application for insurance was also in legal effect plaintiff's policy of insurance, as heretofore stated, then as provided therein the bylaws would be a part of the contract.

Section 44-806, R. S. 1943, provides: "Every member of such association who may sustain loss or damage shall, as soon as practicable thereafter, notify the secretary thereof, stating the amount of damage or loss claimed. The person or persons authorized by such company to adjust losses shall proceed to ascertain the amount of such loss or damage, and adjust the same." Section 44-807 provides: "Suits at law may be brought against any member who shall neglect or refuse to pay any assessment made against him, in the same manner as for the collection of any other debt; *and a member may bring an action against the company for any loss sustained.*" (Italics supplied.) Section 44-808 provides: "If the officers and directors of any such association shall fail or refuse, after receiving notice of a loss, to take the necessary steps to provide for the payment of the same, they shall render themselves individually liable therefor, and an action may be maintained against them to collect such amount." Other sections of the statute provide that the company shall deposit 50 per cent of all assessments or premiums received from its members for payment of losses in full or upon a *pro rata* basis if its assets are insufficient to pay in full.

It is admitted in the case at bar that the plaintiff gave defendant notice of his claim in proper manner and form almost immediately after the loss. The record discloses that defendant before this action was filed denied that it had a contract of insurance with plaintiff, and denied all liability under such a contract. Further, within a week after plaintiff's loss the vice-president, who was also the treasurer and managing officer of defendant in Nebraska, called at plain-

tiff's farm and told plaintiff that he did not have any insurance and offered to return plaintiff's note, which the latter refused. It is also clear that the company refused to proceed and take the necessary steps required by statute to ascertain the amount of the loss, adjust the same, and provide for payment thereof. In fact at the trial this officer testified that if plaintiff had then tendered payment of the note it would not have been accepted and that he never intended to take plaintiff's loss into consideration, and that plaintiff could not get on a *pro rata* basis for payment thereof until and unless plaintiff established his claim by the judgment of a court.

The above sections of the statutes contemplate that the amount of the loss shall be determined and adjusted by an assessment insurance company without delay in order that the amount of the loss or damage may be determined and the necessary steps may be timely taken by it under the statute to provide for payment of each or all claims from the loss fund in full or upon a *pro rata* basis, dependent upon the amount of the company's assets. That the provisions of the contract of which the statute is a part are reciprocal and mutual cannot be questioned. It is apparent from this record that if defendant were to pay losses from funds on hand for that purpose or had been compelled to prorate losses, plaintiff's claim would not have been taken into consideration by defendant in doing so and available funds would have been paid out on other losses and perchance exhausted if plaintiff had not commenced this action to establish his claim before ninety days from August 20, 1942. It is only because this action was commenced that defendant, as shown by this record, did set aside funds, $828, money on hand for payment of plaintiff's loss in the event that he should obtain judgment.

Section 18 of defendant's bylaws is for the benefit of the insurer and applies only when the cause of the loss has been ascertained, the amount of the loss determined, and adjusted, and the necessary steps have been taken to provide for payment. It is waived by the company and has no applica-

tion where, after receiving statutory notice of loss claimed by a member, the company denies the making of the insurance contract and all liability thereunder, or fails or refuses within a reasonable time to proceed and take the necessary steps required by the statute to provide for payment of the loss. To deny the right to an action immediately, when such a situation is presented, would deprive the insured of a timely remedy to which he was not only lawfully entitled, but one specifically granted by statute.

This position is not only supported by statute but by adjudicated cases. The court held in *Western Home Ins. Co. v. Richardson,* 40 Neb. 1, 58 N. W. 597, that, "Where an insurance company denies the making of the policy and all liability thereunder, and absolutely refuses to pay the loss, the right of action of the insured immediately accrues, although the policy contains the clause giving the company an option either to pay the loss or replace the property damaged within a specified time." In this opinion it was stated: "The authorities sustaining this proposition are numerous. In *Norwich & New York Transportation Co. v. Western Massachusetts Ins. Co.,* 34 Conn. 561, it was held that the denial of all liability and refusal to pay the loss was a waiver of the stipulation in the policy allowing the insurer sixty days within which to pay the loss, and that the suit could be maintained on the policy at once. To the same effect are *Phillips v. Protection Ins. Co.,* 14 Mo., 220 ; *Allegre v. Maryland Ins. Co.,* 10 Md. App., 408." In *Modern Brotherhood of America v. Cummings,* 68 Neb. 256, 94 N. W. 144, the court held: "Where an insurance company denies all liability on a policy, basing its refusal on the ground that the loss or injury insured against has not occurred, the insured may bring an action thereon without waiting for the expiration of the period limiting the time within which an action may be brought." Also, in *Omaha Fire Ins. Co. v. Hildebrand,* 54 Neb. 306, 74 N. W. 589, it was said: "Where an insurance company, either before suit brought or by answer in the action, denies that the policy was in force when the loss occurred, it cannot avail itself of the provision in the policy

that no action shall be brought until sixty days after receipt of proofs of loss and adjustment." See, also, *Home Fire Ins. Co. v. Fallon,* 45 Neb. 554, 63 N. W. 860; *Northern Assurance Co. v. Hanna,* 60 Neb. 29, 82 N. W. 97; 33 C. J., sec. 782, p. 75.

These cases hold in effect that such stipulations and provisions are intended to give the insurer time to inquire into the cause of loss, the amount thereof, and make provision for payment, the very reason for the provision in defendant's bylaws. Defendant cites no authority which makes a different rule applicable to assessment insurance companies than to others. The authorities relied upon by it are not controlling in the case at bar and we must decide that plaintiff's action was not prematurely brought.

We find that the judgment does not exceed the amount claimed and prayed for by plaintiff in his petition, and while there is a conflict in the evidence as to the amount of damages suffered by plaintiff, we are of the opinion that the judgment is amply supported by the evidence. The applicable rules are that, "In a law action where a jury is waived the findings of fact of the trial judge shall have the same force and effect as a verdict of a jury and will not be set aside unless clearly wrong." *In re Estate of Hagan,* 143 Neb. 459, 9 N. W. 2d 794. And, "Where the evidence supports the findings and judgment of the district court on the issues tried in an action at law, the judgment will be affirmed on appeal, there being no error in the proceedings." *Palmer v. Schaber,* 141 Neb. 138, 2 N. W. 2d 923.

For the reasons heretofore stated the judgment of the trial court is affirmed.

AFFIRMED.