## SHAFFER v. MICO INSURANCE COMPANY ET AL.

(No. 87 CVF 3142—Decided January 28, 1988.)

Akron Municipal Court.

*Edward C. Smolk,* for plaintiff.

*Hamilton DeSaussure, Jr.,* for defendant Mico Insurance Co.

*Michael A. Malyuk,* for defendant Concept 4 Insurance Agency.

MAXSON, J. This case is before the court on three motions for summary judgment: (1) the motion for summary judgment filed by defendant Concept 4 Insurance Agency ("Concept 4") on October 2, 1987; (2) the motion for summary judgment filed by plaintiff on October 5, 1987; (3) the motion for summary judgment filed by defendant Mico Insurance Company ("Mico") on October 8, 1987. The three parties have agreed that the case will be disposed of on the motions before the court. On October 2, 1987, an agreed-upon "Stipulation of Facts" was filed which contains all facts material to this case and upon which the court is to base its ruling on the motion before it. The statement of facts in substance is as follows:

Plaintiff is an individual insured of Mico as explained herein. Concept 4 is an independent insurance agency with authority to orally bind coverage for Mico. Mico is an insurance carrier.

On February 20, 1986, plaintiff purchased a three-month personal auto insurance policy (the "policy") from Mico, through its authorized agent, defendant, Concept 4. The policy, which covered plaintiff's then-owned 1972 Plymouth automobile, included liability, property damage, medical payments and uninsured motorist coverages but did not include comprehensive/collision coverage. The policy was renewed on May 20, 1986, August 20, 1986 and November 20,

1

1986, with that final renewal providing coverage through February 20, 1987.

In late December 1986 or early January 1987, plaintiff purchased a 1980 Datsun King Cab pick-up truck for which he paid the sum of $3,450. Plaintiff financed this purchase through National City Bank of Akron which insisted that comprehensive and collision coverage be maintained on the truck as a condition to approving the loan.

Plaintiff telephoned Concept 4 and informed the agent of the truck purchase and the coverage required by the bank. Because the policy did not include collision or comprehensive coverage, it was not possible to merely substitute the new vehicle for the old. Instead, the policy had to be changed to reflect the additional collision and comprehensive coverage requested. Accordingly, on December 31, 1986, Concept 4 mailed plaintiff a change form to be signed and returned to the agency for submission to Mico, and issued plaintiff an oral binder for the collision and comprehensive coverage. Plaintiff returned the signed change form to Concept 4 on January 9, 1987, and it was submitted to Mico, by mail, that same date. On or about January 15, 1987, Mico reviewed the application, determined that the agent at Concept 4 had not inspected the truck per the carrier's underwriting requirements and, by memorandum to defendant Concept 4, indicated that the application could not be accepted until such inspection was performed. That memorandum was received by Concept 4 on January 20, 1987. That same day, Concept 4 unsuccessfully attempted to reach plaintiff by telephone and so mailed plaintiff a letter which notified him that an inspection would have to be performed before the desired comprehensive and collision coverage could be added to the policy and further indicated that plaintiff should con-tact the agency as soon as possible. Plaintiff acknowledges receipt of the letter approximately three days before the accident, and further acknowledges his failure to contact Concept 4 prior to the automobile accident which gave rise to this action.

On January 28, 1987, plaintiff was involved in a single vehicle accident which effectively "totalled" the truck. Plaintiff submitted a claim under the policy which was denied based upon lack of collision coverage at the time of the accident. This lawsuit ensued.

Plaintiff's damages are $3,450 less the truck's $600 salvage value and the deductible of $500 for a total of $2,350.

This court holds that the law in Ohio is that a binder which provides temporary automobile insurance coverage cannot be terminated until the insured receives notice of rejection. *Littell* v. *Republic-Franklin Ins. Co.* (1965), 1 Ohio App. 2d 524, 30 O.O. 2d 543, 205 N.E. 2d 580. This is the rule in the great majority of jurisdictions. As stated in Annotation, Temporary Automobile Insurance Pending Issuance of Policy (1967), 12 A.L.R. 3d 1304, 1327, annotating the *Littell* case:

"A binder, by its nature, effects temporary insurance until the company can investigate the applicant's insurability and issue a policy or reject the risk. Coverage is not terminated until the applicant receives notice of such rejection * * *."

The plaintiff contends that the letter sent to him by Concept 4 after its failure to reach him by telephone is not sufficient as a rejection notice in that it does not comply with the requirements for cancellation of the policy set forth in R.C. 3937.32 and 3937.33. There is considerable authority from other states that an automobile insurance binder must be cancelled in accordance with the relevant statutory requirements. See, *e.g., Georgia Farm Bur. Mut. Ins. Co.* v. *Gordon* (1972),

126 Ga. App. 215, 190 S.E. 2d 447; *Miney* v. *Baum* (1979), 170 N.J. Super. 282, 406 A. 2d 234; and *Terry* v. *Mongin Ins. Agency* (1981), 102 Wis. 2d 239, 306 N.W. 2d 270, affirmed (1982), 105 Wis. 2d 575, 314 N.W. 2d 349. This court has found no Ohio case directly on point. But, see, *Financial Indemn. Co.* v. *Cargile* (1972), 32 Ohio Misc. 103, 61 O.O. 2d 176, 288 N.E. 2d 861, where the Court of Common Pleas of Hamilton County held that provisions of R.C. 3937.33 and 3937.39 apply to ninety-day automobile insurance policies.

In addition, R.C. 3937.31(C) states, however, that:

"Sections 3937.30 to 3937.39 of the Revised Code do not apply to any policy or coverage which has been in effect less than ninety days at the time notice of cancellation is mailed by the insurer, unless it is a renewal policy."

This court need not decide the issue because it finds it can decide the case before it on narrower grounds. It can be decided by answering the narrower question of adequacy of the letter as a notice of rejection apart from any statutory requirements. This court must keep in mind "the normal regard for vigorous enforcement against an insurer of technical requirements for notice * * *." 2 Schermer, Automobile Liability Insurance (2 Ed. Rev. 1988) 21-9, Section 21.01[2].

The court has found no Ohio cases exactly on point. The holdings in other states seem to be clearly dictated by common sense and fairness, however. The Supreme Court of Minnesota in *Rommel* v. *New Brunswick Fire Ins. Co.* (1943), 214 Minn. 251, 8 N.W. 2d 28, dealt with fire insurance and a factual situation where an insurer rejected an application which related to a previously issued binder. With regard to the adequacy of notice to the insured of such rejection, the court explained that the notification must convey the information in such a manner that the insured would have " 'an opportunity to get insurance elsewhere.' " *Id.* at 264, 8 N.W. 2d at 35.

*State Auto. Mut. Ins. Co.* v. *Bowie* (1939), 280 Ky. 696, 134 S.W. 2d 601, dealt with a situation where the insured was seeking to obtain fire, theft and tornado insurance on a trailer and an application was submitted by the agent to the insurance company. The agent received a letter from the company stating that unless the agent could place the fire, theft, and tornado coverage on the car used to pull the trailer, it would not be possible for it to accept the fire, theft, and tornado coverage on the trailer. The concluding sentence of the letter was: "Please advise us what disposition should be made of this case by return mail." *Id.* at 699, 134 S.W. 2d at 602.

It was a factual issue as to whether the agent had ever seen the letter. But the Court of Appeals of Kentucky questioned whether the letter was adequate as a notice of rejection because it was not a "categorical rejection of the risk * * *." *Id.* at 699, 134 S.W. 2d at 603.

*Schnell* v. *United Hail Ins. Co.* (1945), 145 Neb. 768, 18 N.W. 2d 112, dealt with an application for hail insurance. The insurance company, responding to an inquiry of the insured, wrote the insured a letter which advised the insured, *inter alia,* that:

"* * *in order to complete your application we must have the enclosed Bean Endorsement signed by you. * * * Thanking you for an immediate reply enclosing this endorsement * * *." *Id.* at 774, 18 N.W. 2d at 116.

The Supreme Court of Nebraska held that "[t]his letter could not be said to be a rejection or cancellation of the application." *Id.* To like effect regarding notice is *Loomis* v. *Jefferson Cty. Patrons' Fire Relief Assn.* (1904), 92 App. Div. 601, 87 N.Y. Supp. 121. That New York case held that returning an

application to the insured for correction was not a rejection of the application.

The court finds that the receipt by plaintiff of the letter does not constitute notice of rejection of his application which would operate to terminate his coverage under the binder. This result follows despite plaintiff's failure to contact Mico between receipt of the letter and the accident. This court holds that for a notice of rejection of a binder to be sufficient, it must contain a categorical rejection of the risk covered by the binder which would cause a reasonable insured to believe that another insurer for the risk must be sought. To be effective, such a notice cannot invite further contact of a corrective nature with the agent or insurer without clearly indicating that the binder's coverage has terminated.

The letter does not contain a categorical rejection of the risk. It invites corrective action. The defendants contend that plaintiff believed he had no coverage under the binder after his receipt of the letter. They refer to the plaintiff's statement after the accident and the Mico declaration sheets as evidence. Even if plaintiff so believed, it would not affect the outcome in this case. This is because a reasonable person could logically come to the conclusion that the coverage of the binder would continue so long as the plaintiff contacted Concept 4 within a reasonable time. This court concludes that a reasonable time had not elapsed in the interval between receipt of the letter by plaintiff and the accident. This court need not, therefore, reach any conclusion about the result in this case if a reasonable time had elapsed.

Concept 4 argued in its brief that the tort doctrine of negligence is applicable to this case. Specifically, it argued that:

"Plaintiff's own negligent acts were twofold: First, he ignored the notice, which he admits receiving three (3) days before the accident, and failed to contact his agent to arrange for the required inspection. However, this inaction would not alone have been sufficient to cause the damage of which Plaintiff complains. Second, Plaintiff acted to compound his negligence by driving a vehicle which he *knew* did not have the coverage he had requested (and his loan contract required). It is obvious that but for Plaintiff's knowingly driving without collision/comprehensive coverage his damages and this lawsuit would not have occurred."

The court finds that the plaintiff was not negligent for the reason discussed above.

The binder therefore provided coverage for the truck at the time of the accident. Both defendants are liable because Mico is bound by Concept 4's acts in connection with the binder.

Plaintiff's motion for summary judgment filed on October 5, 1987, is granted. The defendant Concept 4's motion for summary judgment filed on October 2, 1987, is denied. The defendant Mico's motion for summary judgment filed on October 8, 1987, is denied.

Judgment will be entered for the plaintiff and against both defendants in accordance with this ruling in the amount stipulated to in the stipulated fact summary.

*Judgment accordingly.*