PENN MUTUAL LIFE INSURANCE COMPANY, APPELLEE, v. KARL E. LINDQUIST ET AL., APPELLANTS.

FILED APRIL 17, 1936. No. 29518.

*Brown, Fitch & West,* for appellants.

*Montgomery, Hall & Young, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

This is an action in equity, brought by the Penn Mutual Life Insurance Company, plaintiff and appellee, against Karl E. Lindquist, the insured, and his wife, as beneficiary, defendants and appellants, to cancel a supplemental agreement providing for total disability on the ground of false answers made by insured to deceive plaintiff in his application for insurance. The trial court canceled the agreement. Insured appeals.

The Penn Mutual Life Insurance Company filed a petition in equity June 22, 1934, against defendants, alleging that Karl E. Lindquist signed a written application for life insurance on September 21, 1930, which application stated: "My statements and answers made in this application are full, complete and true and shall be part of the contract of insurance when issued;" and just above the signatures of the medical examiner and the insured, and under the answers given to the medical examiner, appeared this statement: "I hereby agree that all the foregoing statements and answers made to the company's medical examiner are a part of my application for insurance, are declared to be full, complete and true, and are offered to the company as a consideration for the contract." That pursuant to such application a policy of insurance in the sum of $10,000, payable to Anna M. Lindquist, wife and beneficiary, was issued on October 14, 1930, and attached thereto was a supplemental agreement for total and permanent disability benefits, for which an extra premium was charged in the sum of $54.70 a year. A photostatic copy of the application, including answers to the medical examiner, and the policy, including the supplemental agreement for total disability, were at-

tached to the petition. Question 11-A in the application signed by the insured was: "Are you now in good health?" To which the insured answered, "Yes." Question 11-B: "When were you last attended by a physician or consulted one?" The answer given by the insured was: "1925." Question 11-C: "For what disease?" and the answer: "Influenza." Question 11-D: "Give details in full." The answer: "Ill three days." To question 11-E, asking the name of the physician who attended him, the answer was: "Dr. S. N. Hoyt, Omaha, Nebr." Question 15: "Has there been any suspicion of, or have you ever had or been treated for any of the following diseases or ailments * * * G. Or any other disease of the brain or nervous system * * *?" To which insured answered, "No." Question 16: "Have you ever had illness, disease, injury or operation other than as stated by you above? If so, give full particulars, date, duration, severity, etc., of each. Use reverse side if necessary." The answer of the insured was, "No."

It is charged in the petition that the answers were false, in that the insured had consulted a physician during July and August, 1928, for a serious mental and nervous disorder termed psychoneurasthenia; that his answers were material to the risk, were made knowingly by the insured, with intent to deceive the plaintiff; that the plaintiff relied upon the answers, and would not have issued the policy, or the supplemental agreement for total disability, if the questions had been correctly and truthfully answered. Upon learning that the insured had not completely and truthfully answered the questions in the application, the plaintiff, before instituting this action, tendered to the insured the premiums paid on the supplemental agreement, with interest thereon, amounting to $261.65, which tender was renewed in court and said amount deposited with the clerk of the district court. By reason of the false statements, plaintiff asks that the supplemental agreement for total disability be canceled and held for naught, and that the insured be enjoined from prosecuting any action based upon said supplemental agreement.

The defendant filed an answer and counterclaim, admitting that the insured signed the written application; denies that insured applied for the supplemental agreement for total disability; admits that the insured consulted a doctor during July, 1928, but denies that he was suffering from any illness of a serious nature, and that after a vacation of about a month he was able to continue his occupation until his present illness in January, 1934; alleges that the agent of the company who solicited the insurance was well acquainted with and knew all the facts in relation to his having consulted a doctor in July, 1928, and the plaintiff is therefore estopped, and asks that the plaintiff's petition be denied; and for a counterclaim set out that the insured became totally disabled on January 15, 1934, and has continued to be totally disabled since that time, and that there are eight months' payments of $100 a month due, with interest, under the total disability clause, and asks that the same be tried as a law action before a jury. The plaintiff filed a reply to the amended answer and an answer to the amended counterclaim, and denies liability under the total disability supplemental agreement because of false answers in the application for insurance. The case was tried to the court, and a decree was entered for the plaintiff company. Notice of appeal was given, and the insured assigns as errors the overruling of the demurrer, the trying of the cause as an equity action instead of a law action, the dismissing of defendant's counterclaim, and finding that the insured did not give true answers to material questions, and that such suppression entitled company to a rescission and cancelation of the supplemental agreement. It is also charged that the court erred in finding that the incontestability clause contained in the policy itself was not a part of the supplemental agreement.

We will first consider the error alleged in the finding by the trial court that the insured did not give true answers to material questions, and that the nervous breakdown of the defendant in 1928, and his treatment therefor, were facts material to the risk involved in the supplementary contract,

and were wholly suppressed by the insured in his answers to direct questions, and that such suppressions entitle plaintiff to a rescission and cancelation of the supplemental agreement for total disability. The evidence of the insured was to the effect that he went to Dr. Kelley in the summer of 1928, and at his suggestion he laid off from work about a month and went up to the woods on an island in Lake Superior, and came back about the 10th of September and then worked steadily.

On the other hand, the evidence of Dr. Ernest Kelley was to the effect that he was connected with the Norfolk state hospital for the insane between 1907 and 1910, and that from 1910 he had been located in Omaha, where his practice consisted of nervous and mental diseases; that insured consulted him nine times in July and August, 1928; that he complained of nervousness, insomnia, night sweats, poor appetite, fear of disease, a pressure feeling in his lower chest, was worried about business affairs, and that he had been troubled this way for about six weeks. His blood pressure was 110/90. He appeared anæmic, with some pallor, and technically his condition was psychoneurasthenia. Dr. Kelley further testified that he gave him three prescriptions, one for a tonic to build him up, one was a sleeping tablet, and one a nerve sedative to take when he was nervous, and he directed him to lay off his work and rest for a time. That insured came to him on the nine different days in July and August, 1928, and then an opportunity came for him to take a trip, and Dr. Kelley advised him to take it, and when he came back he was normal.

Dr. Kelley also testified that he again had occasion to treat Mr. Lindquist in January of 1934, beginning on January 15, 1934, and saw him continuously up to June 23, 1934, and saw him the day before he testified, and that Mr. Lindquist has been suffering from total disability.

Exhibit No. 3-A is a claim for total and permanent disability, received in evidence and stamped by the claim department of the Penn Mutual Life Insurance Company on May 24, 1934. This exhibit, signed by Dr. Kelley on May

14, states that the insured began with a feeling of melancholia; could not concentrate, developed into an acute mental depression, with suicidal tendencies; constantly depressed and emotional; diagnosis—cyclothymic depression. He further answers that the date of the first symptoms of present disability was on November 1, 1933, and that he had treated the insured from July 3 to August 3, 1928, for "psychoneurasthenia with insomnia, tiredness, anorexia, phobias, loss of weight," etc., and that he cannot work and is totally disabled.

The insured testified that, when Dr. Ensor was writing out the answers on the application for insurance, he explained to Dr. Ensor that a couple of years before he had consulted Dr. Kelley because he was not able to sleep, and Dr. Ensor said, "Well, is that all?" And insured said, "Yes." "Well," he said, "that is immaterial."

Dr. R. R. Ensor, called in rebuttal by the plaintiff, testified that in his examination of the defendant he wrote down each answer as given by the defendant, and denied that the insured had informed him that he had ever consulted Dr. Ernest Kelley or been treated by him prior to the medical examination that he was giving him, and that if the insured had made any such statement to him it would have been noted on the application.

Dr. Samuel B. Scholz, Jr., testified by deposition that he was the medical director of the insurance company, and testified that the company would not have granted the disability agreement had it known in 1930, when it issued the policy, that Mr. Lindquist had been treated two years before for the impairment disclosed in the answers made by Dr. Kelley in exhibit 3-A in the claim for total disability.

Now let us examine the law in reference to such a state of facts. In *Royal Neighbors of America v. Wallace,* 73 Neb. 409, 102 N. W. 1020, it was held: "An untrue answer in an application for life insurance in regard to matters which are shown to be within the knowledge of the applicant and are material to the risk will avoid the policy."

In *Prudential Ins. Co. v. Ashe,* 266 Mich. 667, 254 N. W.

243, the insured's statement to agent was that he was in good health, and he concealed the fact that he had been ill with pleurisy, was being treated for fistula, had finished treatment for lumbago, and had a condition indicating tuberculosis. The court held that such misrepresentation of facts voided reinstatement of life policy.

In *Damgaard v. South Dakota Benevolent Society*, 62 S. Dak. 533, the insured certified in her application: "I am in good health. That I have no ailment that I know of that will shorten my natural life." November 1, 1932, policy was issued. December 26, 1932, she died of a heart ailment, with which she had been afflicted for more than a year, and for which she had been taking medicine, and a week prior to signing the application she had been in bed and attended by a physician. Deceased was not in good health, and the representation to that effect was knowingly false. To permit a recovery under all the circumstances shown by this record would be to sanction a fraud.

In the case of *Muhlbach v. Illinois Bankers Life Ass'n*, 108 Neb. 146, 187 N. W. 787, we find a reversal of a judgment for plaintiff, based upon fraud in that the insured denied, in answer to a question, that his parents or sister had ever been afflicted with insanity, which was false, and it is stated that untrue answers in reference to matters of opinion or judgment will not avoid a policy if made in good faith and without intention to deceive, but if such untrue answers are shown to be within the knowledge of the applicant, and are material to the risk, such answers will avoid a policy. In this and other cases it is material to examine the question whether, if a true answer had been made, the policy of insurance would have been written. *Souza v. Metropolitan Life Ins. Co.*, 270 Mass. 189, 170 N. E. 62; 4 Cooley's Briefs, 3293; *Stanulevich v. St. Lawrence Life Ass'n*, 228 N. Y. 586, 127 N. E. 315.

In *Jefferson Standard Life Ins. Co. v. Stevenson*, 70 Fed. (2d) 72, the application, made a part of the policy, had the answer that the applicant had not suffered from any disease of the lungs; had not consulted a doctor for any other cause

within the past five years. The testimony showed that in July preceding she made five visits to a doctor's office, and he told her she had lung trouble, and advised her to stay in bed and keep the children away from her. The court say: "It was error to refuse to give the peremptory instruction. * * * The answer to the crucial question was not partial or imperfect; it was full and complete." See, also, *Kaffanges v. New York Life Ins. Co.,* 59 Fed. (2d) 475; *New York Life Ins. Co. v. Stewart,* 69 Fed. (2d) 957; *Shaner v. West Coast Life Ins. Co.,* 73 Fed. (2d) 681; *Mutual Life Ins. Co. v. Hilton-Green,* 241 U. S. 613.

It is held that representations that the applicant has had no medical attention in the five years preceding, and has never received or applied for treatment at any hospital, are representations that are material to the risk, so that their falsity invalidates the policy. *Minsker v. John Hancock Mutual Life Ins. Co.,* 254 N. Y. 333, 173 N. E. 4, 81 A. L. R. 829. In the notes to this case in the A. L. R. appears an exhaustive discussion of every phase of this subject, with abundant citations of authorities, and in the notes appears: "Is an insurance policy so distinctive among contracts, either in the manner of its inception, or in the purpose which it fulfils, that the law will not apply to it the principle that a person should be held to a signed statement, when he is seeking to enforce a right against another who has not been guilty of any fraud towards him in procuring the signature? * * * Insurance is considered as one of the necessities of life. As now organized and conducted, the losses paid by an insurance company fall ultimately upon the policyholders. It is in the interest of all insured persons to have their insurers safeguarded in their right to select risks upon adequate and truthful information."

In this case the trial court was justified in believing from all the evidence that the insured made the answers as written, and that the answers made were false and fraudulent; that the answers did not relate to a passing indisposition, but related to treatment for a serious nervous malady; that the total disability agreement would not have

been entered into by the company if it had known the true facts; that the defendant is now claiming total disability payments of $100 a month for the same or a very similar disease to that for which he concealed being treated nine times from the medical examiner when the application was being written.

The following authorities support the position of the court in this case: *Hews v. Equitable Life Assurance Society*, 143 Fed. 850; *Johnson v. American Nat. Life Ins. Co.*, 134 Ga. 800, 68 S. E. 731; *Bowyer v. Continental Casualty Co.*, 72 W. Va. 333, 78 S. E. 1000; *Joseph v. New York Life Ins. Co.*, 219 Ill. App. 452; *Metropolitan Life Ins. Co. v. Jennings*, 130 Md. 622, 101 Atl. 608; *Mutual Life Ins. Co. v. Long*, 12 Ohio App. 252; *Seaback v. Metropolitan Life Ins. Co.*, 274 Ill. 516, 113 N. E. 862; *Wingo v. New York Life Ins. Co.*, 155 S. Car. 206; *National Life & Accident Ins. Co. v. Nagel*, 260 Mich. 635, 245 N. W. 540.

The insured defends the application for cancelation on the further ground that the agent who sold him the policy knew all about the attack of psychoneurasthenia that he suffered in July and August, 1928, and claims that this knowledge of the agent is imputed to the company. There is no proof, however, that the agent knew the answers made to the examining physician.

Edward G. Gehrman was called as a witness by the defendants, and testified that he was 42 years of age, had worked 27 years in the Stock Yards National Bank; that he wrote life insurance for the plaintiff as part time work for about five years; that he solicited the defendant for about three months before he finally wrote him this policy; that he saw him during those three months about once or twice a week, and finally got an application signed for $7,500, but telephoned the state agent to send an additional $2,500, and also send a $10,000 policy with all the trimmings, and that he finally sold the larger policy; that he knew that in the summer of 1928 the insured had been sick, but he did not know how often he was going to a doctor; that he got a

regular commission upon the $10,000 policy he delivered; that the insured's position in the bank was transit manager, and witness Gehrman was paying teller in the bank. Witness said he had not been at the insured's house more than a dozen times, and that the insured had not been in his house more than three or four times during the 25 years that they both worked in the bank.

In the case of *Morrissey v. Travelers Protective Ass'n,* 122 Neb. 329, 240 N. W. 307, it was held that, where an applicant made untruthful statements in an application for insurance, which statements were material to the risk of insurance, the insurance association is not estopped to deny its liability, even though the member who solicited said applicant knew of the untruthfulness of the statements so made by the applicant. See, also, *Metropolitan Life Ins. Co. v. Freedman,* 159 Mich. 114, 123 N. W. 547. The United States supreme court has considered a very similar case, *New York Life Ins. Co. v. Fletcher,* 117 U. S. 519, 29 L. Ed. 934.

The trial court held that the incontestability clause was not a part of the total disability agreement. We find the policy provided in section 6 that it should be incontestable after it had been in force, during the lifetime of the insured, for a period of one year from its date of issue, except for the nonpayment of premiums. The defendants contend that the supplemental agreement upon the subject of total disability was attached to and made a part of the policy, and thereby became subject to the incontestability clause referred to, and the year having elapsed, the agreement could not be attacked. On the other hand, the plaintiff contends that the contract of insurance consisted of three parts, the application, the policy of $10,000 life insurance, and the supplemental agreement for total disability benefits, which agreement provided in its terms that it should include certain provisions of the policy relating to change of beneficiary, assignment, payment of premiums, etc., and then provided: "No other provisions of said policy shall be deemed to apply to this agreement;" and, therefore, by its

own terms the incontestability clause after one year did not apply to this disability rider. This is clearly in accordance with subdivision 5, section 44-602, Comp. St. 1929, which provides that the company may except the incontestability clause from such riders, and that was clearly the intention of the plaintiff company in this case. Under the terms of the total disability contract and the provision of the Nebraska statute cited, it is clear that the trial court was right in holding that the supplemental agreement was expressly exempt from the incontestability clause of one year. *Penn Mutual Life Ins. Co. v. Hartle,* 165 Md. 120, 166 Atl. 614; *Greber v. Equitable Life Assurance Society,* 28 Pac. (2d) (Ariz.) 817.

We have carefully examined each of the errors set out by the appellants, but cannot discuss them in greater detail, for this opinion is already long. We have endeavored to point out that the incontestable clause was not a part of the disability rider attached to the policy, and that the $10,000 policy is in no way affected by this action; that the plaintiff had no adequate remedy at law, and that the appellants have shown no prejudicial error in the judgment of the trial court.

AFFIRMED.