BERTHA E. GILLAN, APPELLEE, V. EQUITABLE LIFE ASSURANCE SOCIETY, APPELLANT.

6 N. W. (2d) 782

FILED DECEMBER 11, 1942. No. 31397.

*Brown, Crossman, West, Barton & Fitch* and *Sloans,: Keenan & Corbitt,* for appellant.

*Waring & Waring* and *Perry, Van Pelt & Marti, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

ROSE, J.

This action was commenced in the county court of Fillmore county by Bertha E. Gillan, plaintiff, to recover from the Equitable Life Assurance Society, defendant, monthly instalments of disability benefits for April and May, 1941, each for $50. The action was defended on the ground that plaintiff procured the policy for disability benefits by false statements in her application for insurance and by false answers to questions in her examination by defendant's physician.

The county court decided the case in favor of plaintiff and entered judgment against defendant for $100. Defendant appealed to the district court.

Plaintiff in her petition pleaded that, in consideration of quarterly premiums of $21.85, defendant issued to her in January, 1929, a life insurance policy for $5,000. Pursuant to an option therein the policy was converted in January, 1934, into a 20-payment life insurance policy under which plaintiff was entitled to dividends. Each policy contained a provision for disability benefits of $50 a month and for waiver of premiums by defendant in the event of plaintiff's total and permanent disability. It was alleged

that plaintiff became totally and permanently disabled in 1930 and that thereafter defendant paid the monthly instalments of $50 until April, 1941, but refused to make further payments and demanded reimbursement of disability benefits and of dividends previously paid to plaintiff; that the policy remains in full force.

In an answer to the petition, it was alleged that plaintiff procured by fraud the policy issued by defendant to her in January, 1929; that the application therefor, in connection with the medical examination to which she submitted and the history given by her, was the sole basis for the issuance of the policy; that the quarterly premium of $21.85 included quarterly payments of $2.90 for total and permanent disability; that the policy was issued by reason of the application and plaintiff's false statements of material facts; that, after plaintiff signed the application and before the policy was issued, she was required to appear before a medical examiner of defendant, state every physician or practitioner whom she had consulted or who had treated her during the past five years and to answer the following: Have you ever had or been treated for any disease or disturbance of the stomach, liver, intestines, kidney, bladder, or genito-urinary organs?

It is alleged in the answer that these questions were propounded by the medical examiner to plaintiff who answered "none" or "no" to each of them; that the answers were written by him in the part of the insurance contract containing the examination and that the statements were signed by her in his presence. It is further alleged by defendant that the answers to the foregoing questions were material to insurance and disability risks, were parts of the contract and were false in the following particulars: Prior to 1918, plaintiff had a disturbance or disease of the right kidney, which was anchored by a surgical operation, and submitted to an operation for the removal of the right fallopian tube and ovary. On May 14, 1928, she submitted to a surgical operation for the removal of the uterus containing tumors.

It is alleged in the answer that plaintiff agreed in writing as a part of her application that "the foregoing answer shall also become part of any policy contract that may be issued on the strength thereof."

It is also alleged in the answer that the original policy lapsed for nonpayment of a premium and was reinstated and converted into the new policy in reliance on a false certificate by plaintiff that she was in good health and on her false statements in her application and medical examination; that, so relying upon plaintiff's misrepresentation of material facts, defendant approved her application for total and permanent disability and paid her $50 a month from May 9, 1930, to April 9, 1941, or $6,550, and waived payment of premiums from the date of disability; that defendant did not discover the fraud until April, 1941. In a cross-petition defendant prays for judgment against plaintiff for $6,550, interest and costs.

In a reply to the answer plaintiff denied defendant's charges of fraud and alleged that defendant furnished its examining physician with blanks for answers to printed questions for the purpose of the examination; that plaintiff answered truthfully, in the presence and hearing of defendant's soliciting agent, all of the questions read to her by the examining physician; that the answers alleged by defendant to be false were not the answers of plaintiff but were answers inserted in the blanks by the examining physician; that plaintiff signed the application without reading it, and did not then know any of her answers had not been correctly reduced to writing and did not discover the discrepancies until her deposition was taken in this case; that she was in good health when the policies containing the provisions for disability benefits were issued.

Upon a trial of the issues, the jury rendered a verdict in favor of plaintiff for $102.40. From judgment therefor, and from dismissal of the cross-petition, defendant appealed to the supreme court.

The principal issue of fact arose on the traversed plea of defendant that insurer was induced by false and mate-

rial statements of plaintiff to enter into the contracts and that otherwise the risks for disability benefits would not have been assumed. On this issue the burden was on defendant to prove that the statements were untrue, that they were made knowingly with the fraudulent intent to mislead and deceive insurer, that they were material to the risks and that the insurer relied on them. *Pollard v. Royal Highlanders*, 128 Neb. 790, 260 N. W. 399.

Defendant adduced evidence to prove plaintiff falsely stated that she had not consulted physicians within five years; that, contrary to her application and examination, she submitted to an operation for the removal of the right fallopian tube and ovary and to a surgical operation for the removal of the uterus containing tumors. Evidence to this effect came from physicians who performed the operations and from hospital records, plaintiff having waived the protection of confidential relations between physician and patient. Defendant also produced the application and the record of the physician's examination, signed by plaintiff, containing misstatements of material facts. In addition, officers of defendant testified in effect that, according to custom, the policies would not have been issued, if plaintiff had told the truth in her preliminary statements to procure insurance and disability benefits.

It is argued by defendant that plaintiff is bound by the answers in the application and in the statements which she signed, that they are parts of the insurance and disability contracts, that they cannot be contradicted by parol and that there is no competent evidence, to sustain a verdict in favor of plaintiff. There are precedents for the propositions thus stated. *Metropolitan Life Ins. Co. v. Alterovitz*, 214 Ind. 186, 14 N. W. (2d) 570, and cases cited in 117 A. L. R. 790 *et seq.* The weight of authority, however, seems to be to the contrary as shown by the annotator of that case.

Plaintiff testified, in harmony with the allegations of her reply to defendant's answer, that she did not falsely answer questions in her application, history and medical ex-

amination; that the false answers therein were not her answers but were such as were inserted therein by the examining physician or soliciting agent. The evidence in her behalf tended to prove that her disability was caused by tuberculosis of the lungs and that the physical disorders requiring operations had no connection with her lung trouble. On the issue of fraud therefore the evidence was conflicting and presented a case for the jury. *Towle v. New York Life Ins. Co.*, 121 Neb. 175, 236 N. W. 439, and cases cited in opinion. Parol evidence was admissible to prove that, in the application, false answers were inserted by insurer's agent or physician to questions pertaining to the risks instead of the truthful answers given in good faith and without insured's knowledge of the discrepancies. *German Ins. Co. v. Frederick*, 57 Neb. 538, 77 N. W. 1106; *Scott v. New England Mutual Life Ins. Co.*, 128 Neb. 867, 260 N. W. 377; *Farmers & Bankers Life Ins. Co., v. Mathers*, 135 Neb. 757, 284 N. W. 286; *Busboom v. Capital Fire Ins. Co.*, 111 Neb. 855, 197 N. W. 957; *Home Fire Ins. Co. v. Fallon*, 45 Neb. 554, 63 N. W. 860. The insurance solicitor and the insurer's examining physician were agents of the insurer and their acts as such, if misstating the answers of insured in the application, did not bind the insured. *Farmers & Merchants Ins. Co. v. Wiard*, 59 Neb. 451, 81 N. W. 312; *Farmers & Bankers Life Ins. Co. v. Mathers*, 135 Neb. 757, 284 N. W. 286; *Home Fire Ins. Co. v. Fallon*, 45 Neb. 554, 63 N. W. 860. The credibility of the witnesses and the weight of their testimony were questions for the jury. The evidence is found sufficient, in view of the rules of law stated, to support the verdict and to settle the issue of fraud in favor of plaintiff.

Some of the instructions given by the court to the jury are criticized by defendant as erroneous, but when the charge is considered as a whole, as it should be, it conformed to the rules of law applicable to the issues and the evidence, properly submitted the case to the jury and fully protected the rights of defendant. Imperfections in single instructions were harmless. Assigned errors in the refus-

al of the trial court to give instructions requested by defendant are not, therefore, sufficient grounds for the reversal of the judgment.

In the district court plaintiff was allowed as costs for services of her counsel a fee of $500, under authority of statute. Comp. St. 1929, sec. 44-346. This allowance is vigorously assailed as excessive in the present action, where the limit of plaintiff's recovery is $100 with interest and costs. The record consists of three large volumes. The case was tried in the county court and in the district court. The vigor and skill of eminent counsel for defendant in their defenses imposed on counsel for plaintiff onerous services and responsibilities. Defendant alleged in its answer to the petition that the provision in the policies for disability benefits never went into effect, owing to alleged fraud of plaintiff. Had this defense been established, plaintiff might have been deprived of $50 a month for the rest of her life. A cross-petition for reimbursement of $6,550 was interposed. There was therefore more involved in the action than $100. Defendant took depositions in Denver and produced clinical records of surgical operations not disclosed by plaintiff's application for insurance. Plaintiff was confronted with intricate details of her physical disorders as far back as 1910. While the 500-dollar fee seems liberal, the long record does not prove an abuse of the trial court's discretion in allowing it.

A fee of $200 for services of counsel for plaintiff in the supreme court is allowed as costs.

Failing to find in the record error prejudicial to defendant, the judgment below is affirmed.

AFFIRMED.