EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. GILLAN et al.

Civil Action No. 103.

District Court, D. Nebraska, Lincoln Division.

April 12, 1945.

642

Ralph M. West and John L. Barton, of Brown, Crossman, West, Barton & Fitch, all of Omaha, Neb., for plaintiff.

Robert VanPelt, of Perry, VanPelt & Marti, all of Lincoln, Neb., and Robert B. Waring, of Waring & Waring, all of Geneva, Neb., for defendants Bertha Howard Gillan and James L. Gillan. .

DELEHANT, District Judge.

The plaintiff will be referred to as "the Society," the defendant Bertha Howard Gillan as "Mrs. Gillan," the defendant James L. Gillan as "Mr. Gillan," and the defendant Maude F. Miller as "Mrs. Miller."

The society was the defendant, and Mrs. Gillan the plaintiff in the case of Gillan v. Equitable Life Assurance Society, 142 Neb. 497, 6 N.W.2d 782; Id., 143 Neb. 647, 10 N.W.2d 693, 148 A.L.R. 496; and the original insurance policy and converted policy involved in that case are the policies upon which this suit is based. The facts relating to the procurement and issuance of the original policy and the converted policy, and the nature of Mrs. Gillan's disability and the cause and history thereof, to the extent that it should be considered here, are the same in both cases and, except for the additional items of evidence later noted herein, are presented to this court in the original bill of exceptions and record in the earlier case and the two opinions therein of the Supreme Court of Nebraska. Mr. Gillan and Mrs. Miller were not parties to the former case; nor will their presence as parties here require any considerable discussion. At the time of filing the present suit they were the designated beneficiaries under the death benefit provisions of the current policy, and they are respectively the husband and a sister of Mrs. Gillan. While Mr. Gillan has answered here, Mrs. Miller has not appeared and her default has been formally entered.

So, no further general statement of facts will be made on this occasion, and the court simply incorporates by reference into this opinion the summary of facts contained in the second opinion in the state court case. That seems appropriate and conducive to desirable brevity. No special consideration requires the publication of this memorandum. And the repetition of the factual background of the case is unnecessary both, (a) in the explanation of the court's ruling to counsel, who are thoroughly familiar with it, and (b) for the purpose of appeal, since the Nebraska Supreme Court's two published opinions are readily available and also constitute a part of the record before this court.

The present action, ostensibly to obtain a declaratory judgment, but praying also for relief not ordinarily granted in the way of a declaratory judgment, was filed on June 21, 1941, shortly after the institution of the state court case and while it was still pending and undetermined in the County Court of Fillmore County, Nebraska.

In the prayer of its original complaint herein, demand was made by the society for the recovery from Mrs. Gillan of $6,550 theretofore paid to her in the way of installments of total disability benefits. The court now understands the society, by forbearing to press that demand, inferentially to concede that, in view of the history of the state court case, it may not now be maintained. Whether that position be conceded or not, the court considers that the precise cause of action involved in that demand was litigated to final judgment upon a cross petition in the state court, which, on the basis of authorities hereafter discussed, constitutes an effective bar to its relitigation in this case. Hence, the court now denies that demand and dismisses the second cause of action of the complaint.

By an amendment to its complaint, filed before the time originally allowed for answer herein, the society also made claim and prayed for the recovery against Mrs. Gillan of $265.15, being the total

amount of dividends by it allegedly paid to her upon the converted policy for the years 1936 to 1941, both inclusive. Passing over without the expression or intimation of an opinion thereon, certain questions arising on the failure to serve the amendment, Rule 5(a), Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c (as distinguished from the matter of notice and leave for filing which are unnecessary, Rule 15(a), Federal Rules Civil Procedure), the court observes no proof of the alleged payments. The record before the court shows certain demands for repayment of the amount, which are adequate proof of their making, but not of the actual obligation to which they refer. That prayer is, therefore, denied, without prejudice to reconsideration of the point, if within the time allowed by rule, the society, in a motion for rehearing upon that issue, shall direct to the court's attention evidence sustaining its claim.

Request was also made early in the course of this case for injunctive relief against the prosecution of the case then pending in the state court, which Judge Munger, on October 10, 1941 (filing 10), appropriately denied.

The court will not discuss any of those demands further.

As amended after the termination of the state court case, the society's complaint, (1) upon the ground of Mrs. Gillan's alleged fraudulent statements, in the respects asserted also in the state court, in the procurement of the original policy and of the equally effective applicability of those statements in the procurement of the converted policy, and (2) upon the allegation of the opinion of the Supreme Court of Nebraska reported in 143 Neb. 647, 10 N.W.2d 693, 148 A.L.R. 496 (which it asserts to constitute a conclusive judicial determination upon the issue), now prays for a decree (1) finding that the answers of Mrs. Gillan to questions 6(a), 7(b), 7(d), 7(e), 8(a), 8(c), 8(d), and 8(f) in her written application for the original policy were false and fraudulent and material to the risk, and made with intent to deceive the society and that the society relied upon those answers in issuing both the original and the convert-

ed policy and would not have issued them, or either of them, if the questions involved had been truthfully and correctly answered; (2) directing the surrender of the policies to the plaintiff for the purpose of deleting therefrom the provisions with reference to permanent and total disability and double indemnity; (3) cancelling both of those clauses; and (4) enjoining the defendants and each of them from commencing or maintaining any action of any kind or nature upon either the disability provision or the double indemnity provision of the converted policy. And with that background and particularly upon the assertion of persistent and continued default since July 21, 1930, in the payment of premiums, it further prays for a finding and judgment that the original policy lapsed and that the converted policy never became effective. The prayer also seeks general relief and costs.

The final answer of Mr. and Mrs. Gillan, admitting the identity, residences and relationship of the several parties; the application for and issuance of the two policies; the designation of beneficiaries; the institution and formal history of the state court proceedings in respect of the then unpaid disability installments to and including that for May 1941; and the earlier payment of $6,550 to Mrs. Gillan on account of such disability installments prior to those involved in the state court suit, affirmatively alleges the continued and permanent total disability of Mrs. Gillan; the truthfulness of her actual answers to the medical examiner in response to the questions in the application; his inaccurate and incorrect transcription of the answers in the respects in which they are challenged; her signature of the application including them without knowing or having had an opportunity previously to read the answers as they were set down; (inferentially) her want of precise knowledge of the extent of the surgical operation performed upon her in Denver, Colorado, in May, 1928, but her disclosure to the medical examiner for the society of the identity of the surgeon performing it, coupled with a denial of the accuracy of the complaint's allegation of the surgeon's post operative diagnosis; her abandon-

ment of a policy of life insurance in another company in reliance upon the validity of the life policy in suit; estoppel of the plaintiff, by reason of the history of its handling of her disability claim, now to assert the invalidity of the policy. Then, the answer pleads in detail the history of the state court case, its several pleadings, the trial in the District Court of Fillmore County, Nebraska, resulting in the verdict of a jury and judgment of the court; the failure of the society to except in its motion for new trial to the instruction of the trial judge to the jury giving to the jury, as its alternatives, a verdict for Mrs. Gillan for $100 plus interest and one for the society for $6,550, or to the judgment for Mrs. Gillan and against the society and for the dismissal of its counterclaim; the appeal to the Supreme Court; the affirmance there of the District Court's judgment; and the society's payment of the judgment with knowledge of Mrs. Gillan's claimed fraud. It also alleges that the state court's "judgment and decree is res judicata as to the issues raised by the plaintiff herein and is binding upon the plaintiff, and plaintiff herein is estopped, barred and precluded from prosecuting this action." The answer generally denies all other matter alleged in the complaint as amended. As to the claim of default by Mrs. Gillan in payment of premiums, the answer, though not directly admitting nonpayment of premiums or the amount thereof, does "*admit* the waiver of premiums on said policies Exhibits A & C by reason of Bertha Howard Gillan's total and permanent disability." Thus, fairly understood, and in the absence of an explicit denial, the answer may be regarded as admitting implicitly that the premiums were not paid, and justifying their nonpayment.

■ Upon those pleadings the current issues were made. Shortly before final submission of the case to this court upon its merits, the society moved for a summary judgment in its behalf. Before that question was fully submitted, the parties on October 10, 1944, stipulated that, in the event of the court's failure to sustain the motion for summary judgment, the case should stand finally submitted to the court on its merits, upon the pleadings; the evidence and testimony contained in the bill of exceptions in the state court case; the depositions of witnesses, Beckwith, Neild and Choffin; affidavits of Edwin T. Gardner and Paul T. Miller, with notices attached to the former; the two opinions of the Supreme Court of Nebraska; the journal entry of the District Court of Fillmore County, Nebraska, on entry of mandate from the Supreme Court of the state; and certain specific questions and answers from a deposition of Mrs. Gillan taken during and as an incident to the state court case. That submission was prompted by the fact that comparatively little beyond the material directed to the court's attention upon the motion for summary judgment, remained for presentation in the final submission of the case on its merits. The presentation of briefs followed over a long interval of time.

The court recognizes that the consideration just mentioned as prompting final submission is true. Hence, it seems more appropriate in the present posture of the case that the final ruling be upon the merits of the whole record before the court, rather than upon the motion for summary judgment. That motion is, therefore, denied and overruled, without prejudice, however, to the consideration of the issues presented therein in final ruling upon the merits of the case; to which the court now comes.

■ The positions assumed by the repective parties to the pending case seem clearly to invite the employment of the procedure contemplated by the Federal Declaratory Judgment Act, Title 28 U.S.C.A. § 400, so far as the prayer of the complaint seeks relief under it. The authority to grant the relief there provided is conferred "in cases of actual controversy." That an actual and active controversy exists over the rights of the parties is manifest throughout this record. No proceeding in respect of it is now pending in any other court, although from the very nature of the claim of Mrs. Gillan, and ultimately of the beneficiaries under the policy, successive actions in a presently undeterminable number are a very obvious, and in part imminent, probability. Such a situation supports the court's right to exercise the jurisdiction committed to it. Ætna Life Insur-

ance Co. v. Haworth, 300 U.S. 227, 57 S. Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L. Ed. 826; Ætna Life Insurance Co. v. Williams, 8 Cir., 88 F.2d 929; Columbian National Life Insurance Co. v. Foulke, 8 Cir., 89 F.2d 261; Western Casualty & Surety Co. v. Beverforden, 8 Cir., 93 F.2d 166; United States Fidelity & Guaranty Co. v. Pierson, 8 Cir., 97 F.2d 560; New York Life Insurance Co. v. Roe, 8 Cir., 102 F.2d 28; Ætna Life Insurance Co. v. Martin, 8 Cir., 108 F.2d 824.

It is true that a substantial measure of discretion is committed to the court in determining whether it should exercise the jurisdiction allowed under the act. Brillhart v. Excess Insurance Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620, rehearing denied 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed. 562. But that discretion is not to be confused with caprice, but is a judicial discretion, with a basis in good reason, and may not be employed to avoid a difficult decision or to refuse to proceed upon the hypothesis that in some future case the pending issue may be determined with finality. Columbian National Life Insurance Co. v. Foulke, 8 Cir., 89 F.2d 261; Ætna Life Insurance Co. v. Martin, 8 Cir., 108 F.2d 824; Creamery Package Mfg. Co. v. Cherry-Burrell Corp., 3 Cir., 115 F.2d 980, certiorari denied 312 U.S. 709, 61 S.Ct. 828, 85 L.Ed. 1141; Samuel Goldwyn, Inc., v. United Artists Corp., 3 Cir., 113 F.2d 703.

But if it be conceived that the relief which the plaintiff seeks is, either wholly or in part, a simple decree in equity rather than a statutory declaratory judgment, the alleged facts seem appropriate for the consideration of a court of equity. Terry v. New York Life Insurance Co., 8 Cir., 104 F.2d 498. In support of an argument to the contrary, counsel for the defendants cite and rely upon New York Life Insurance Co. v. Miller, 8 Cir., 73 F.2d 350, 97 A.L.R. 562, and Enelow v. New York Life Insurance Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440, and DiGiovanni v. Camden Fire Insurance Ass'n, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47, together with certain textual authority. They are properly applicable in their several immediate factual contexts which, however, are distinguishable from the case before the court in this respect, that in largest part, the asserted liability against which the present complaint is aimed has not matured, whereas each of the cited authorities arose in an instance where loss had occurred. The Miller and Enelow cases were expressly distinguished upon this point in Hesselberg v. Ætna Life Insurance Co., 8 Cir., 75 F.2d 490, and have been similarly distinguished in several other cases.

The court considers that it is under the necessity of affirming and exercising jurisdiction of the case.

The validity of the original policy of life insurance as such is not now challenged, and, under the applicable statute of Nebraska, could not be attacked at this late date. C.S.Neb. 1929, Sec. 44-602(5) in the form which was in force when the policy was issued. The claim of initial invalidity is directed to the provisions of the policy for disability benefits and double indemnity, which were devised separately and for distinct considerations to provide for additional benefits. Within the express permission of the cited statute the original policy contained the following clause: "This policy except as to the provisions relating to disability and double indemnity shall be (a) incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue, provided premiums have been duly paid, and (b) free from restrictions on travel, residence, occupation or military or naval service." In the converted policy the following clauses appear in appropriate places: (a) "This double indemnity provision and benefits herein provided shall be excepted from the operation of the provisions of said policy with respect to incontestability and freedom of travel, residence and occupation." And (b) "The provision of said policy with respect to incontestability and freedom of travel, residence and occupation shall not apply to this disability provision." Beneath the title of the general incontestability and travel, residence and occupation clause in the latter policy, appears the typed language "Except as to the Provisions Relating to Disability and Double Indemnity."

The effectiveness of comparable or identical provisions withdrawing disability and double indemnity benefits from the operation of a statutory incontestability clause has been conclusively affirmed. Penn Mutual Life Insurance Co. v. Lindquist, 130 Neb. 813, 266 N.W. 600; Gillan v. Equitable Life Assurance Society, 143 Neb. 647, 10 N.W.2d 693, 148 A.L.R. 496; Terry v. New York Life Insurance Co., 8 Cir., 104 F.2d 498.

In their briefs counsel for Mr. and Mrs. Gillan suggest that in consequence of the following sentence, "This contract shall be construed to be made and payable in the state of Colorado," appearing not in the body, but by stamped impression near the top of the face, of the original policy, and not preserved in the converted policy, the law of Colorado, and not that of Nebraska, is applicable here. It is interesting that no pleading raised, or evidence supported, that issue in the state court, where the parties contended solely upon the assumption that the law of Nebraska was entirely applicable. Nor is there either pleading or evidence upon it here. (In mentioning which, the court neither affirms nor denies the necessity of specific pleading and proof in a federal court of the domestic law of a state other than that of the forum.)

However, the question seems purely academic. Counsel for Mr. and Mrs. Gillan concede that the courts of Colorado have not passed upon the effect of provisions of policies comparable to those lately quoted. But, Colorado does have a statute expressly permitting the inclusion of such provisions in policies, which is essentially indistinguishable from that of Nebraska. Colorado Stat.Ann., 1935, Chapter 87, Section 57, Volume III, Page 646. And until the Colorado courts accord to it a construction at variance with that of the cases just cited (and extended study by this court has failed to discover any), they may be regarded as controlling, particularly since they appear to be in accord with the general rule upon the point.

The litigants on both sides of the case rely, for precisely contrary consequences, upon the asserted effect of the proceedings in the state court, each of them upon a different aspect of those proceedings. In approaching that important problem, it becomes necessary to determine the relationship between the cause of action involved in that case and the claim for relief here.

█ In the first place, it is clear, beyond question, that different causes of action are involved in the two proceedings. The earlier case was ultimately tried upon a cause of action for total disability benefits under the policy (like provisions were contained in the original and in the converted policy) for the months of April and May, 1941. The claim in this court involves (a) potential liability for alleged total disability from and after June, 1941, to the present time and indefinitely hereafter, and (b) a possible future claim for double indemnity in consequence of accidental death, and (c) the ultimate, but presently unmatured, claim for death benefit in the amount of the face of the policy. This statement eliminates any possibility of the identity of the claims in the two cases and makes it clear that separate causes of action are involved. And that has been determined beyond question. United States Fidelity & Guaranty Co. v. McCarthy, 8 Cir., 33 F.2d 7, 70 A.L.R. 1447; New York Life Insurance Co. v. Stoner, 8 Cir., 92 F.2d 845; Aetna Life Insurance Co. v. Martin, 8 Cir., 108 F.2d 824.

█ The importance of the determination whether the present suit is upon a cause of action identical with, or different from, that litigated in the state court lies in the distinction, arising upon that issue, in the effect of a former judicial determination as a bar to further litigation of a cause of action, or as res adjudicata upon specific ultimate facts. It is thus stated in the leading case of Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195: "In considering the operation of this judgment it should be borne in mind * * * that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect in an estoppel in another action between the same parties upon a different claim or cause of action. In the former case the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, con-

cluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." See also Virginia-Carolina Chemical Co. v. Kirven, 215 U.S. 252, 30 S.Ct. 78, 54 L.Ed. 179; Radford v. Myers, 231 U.S. 725, 34 S.Ct. 249, 58 L.Ed. 454; Bates v. Bodie, 245 U.S. 520, 38 S.Ct. 182, 62 L.Ed. 444, L.R.A.1918C, 355; United States v. Moser, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262; Larsen v. Northland Transportation Co., 292 U.S. 20, 54 S.Ct. 584, 78 L.Ed. 1096; The Nebraska Supreme Court has consistently followed the rule. Slater v. Skirving, 51 Neb. 108, 70 N.W. 493, 66 Am.St.Rep. 444; Gilmore v. Whiteman, 50 Neb. 760, 70 N.W. 364; Wilch v. Phelps, 16 Neb. 515, 20 N.W. 840; Burke v. Munger, 138 Neb. 74, 292 N.W. 53; Reinsch v. Pacific Mutual Life Insurance Co., 140 Neb. 225, 299 N.W. 632; Shepard v. City of Friend, 141 Neb. 866, 5 N.W.2d 108. So has the United States Circuit Court of Appeals for the Eighth Circuit. United States Fidelity & Guaranty Co. v. McCarthy, 8 Cir., 33 F.2d 7, 70 A.L.R. 1447; Water, Light & Gas Co. v. Hutchinson, 8 Cir., 160 F. 41, 19 L.R.A.,N.S., 219; Fitch v. Stanton Township, 8 Cir., 190 F. 310.

█ It may be observed also, though without unnecessary discussion or citation of authorities, that what is concluded by earlier litigation and determination are matters of ultimate fact, rather than items of evidence, or evidentiary facts. Paulos

v. Janetakos, 46 N.M. 390, 129 P.2d 636, 142 A.L.R. 1237; See note beginning 142 A.L.R. page 1243.

The ultimate alleged facts constituting fraud on Mrs. Gillan's part in the procurement of the original policy substantially outlined in the second opinion of the Nebraska Supreme Court, and not now repeated in detail, are the essential basis of the society's claim in this court, for if true, they enter into and affect with their invalidating influence the dealings of the society with the original policy until its repudiation of liability under its total disability and double indemnity clauses, including the matters of the claim of Mrs. Gillan for total disability benefits, and the waiver of premiums. Both parties assert that they were alleged as essential elements of the society's defense and cross petition in the state court case; and the court so finds. Indeed, they are set out in both cases in almost identical language. The question, therefore, is whether they were determined in the state court, and how; for, though the parties all insist that they were determined, they profess to find in the record exactly divergent determinations of them.

Mr. and Mrs. Gillan insist, upon the basis of the jury's verdict and the original judgment of the District Court of Fillmore County, Nebraska, the language of the penultimate paragraph of the Supreme Court's second opinion, the entry of judgment on the mandate of affirmance, and the satisfaction of the judgment by the society, that the essential facts both then and now in issue were conclusively so determined that Mrs. Gillan was entirely absolved from the charge against her of fraud.

Beyond the possibility of question, that would have been true, either (a) if the judgment of the state District Court had never been appealed; or (b) if, having been appealed, the Supreme Court had affirmed it upon the basis either of its original opinion, or without opinion, or even with an opinion containing only the paragraph in its second opinion on which Mr. and Mrs. Gillan rely. Any such disposition would necessarily have involved the determination in favor of the plaintiff there, of the very facts that are essential to the allowance here of any relief in favor of the

society. The citation of authority in support of that conclusion is unnecessary for it is universally recognized, and is not considered to be questioned even by the society upon this submission.

But the Supreme Court of Nebraska did not proceed in any of the directions successively and alternatively assumed in the last paragraph. On the contrary, after having previously considered, and by its unanimous opinion determined, the then and now material issues in favor of Mrs. Gillan, upon motion for rehearing, it exhaustively reexamined its former position and, again acting unanimously, though after a limited change in its personnel, considered and reached a precisely opposite conclusion upon each of the facts in issue.

In the face of that opinion, how can it be said that the alleged facts constituting fraud on Mrs. Gillan's part were finally and conclusively found and determined in her favor? Such a result may be reached only by the rejection in its entirety of the portion of the second opinion dealing with the question of fraud. And Mr. and Mrs. Gillan argue that it is entirely to be disregarded, in its context, as dictum. The contention of Mr. and Mrs. Gillan is thus summarized in a sentence in one of the briefs: *"The last two paragraphs of the opinion, however, affirm* the judgment of the lower court, and *are based upon the proposition that the policy was valid because of the theory on which the parties tried the case."* (Emphasis added.) It would seem to this court that a more exact appraisal of the paragraphs would consider them as holding that, although, in fact and in law, the policy was invalid ab initio (and the total disability and double indemnity provisions, contestable without limitation as to time), in consequence of the fraud in its procurement, theretofore alleged by the society and analyzed and determined by the Supreme Court, the society was legally estopped, by reason of its course respecting evidence, instructions and exceptions upon the trial of the particular action then before the court, to have the benefit of that determination in the way of a reversal of the judgment upon the particular claim that had been litigated.

An opinion of the Supreme Court of Nebraska is not a mere voluntary and supererogatory effort on its part. It is provided by statute that: "The (Supreme) court shall cause to be reported with as much brevity as practicable each of its decisions which reverses or modifies the judgment of the district court, and also each other decision, whether made in disposing of a motion or otherwise, which determines or modifies any theretofore unsettled or new and important question of law, or that gives construction to any provision of the Constitution or of a statute not before construed, together with such other of its decisions as are deemed to be of interest or importance." R.S.Neb. 1943, Section 24-208. Such opinion, duly certified, must also be filed in the case in the trial court. R.S. Neb. 1943, Section 25-1935.

And, though opinions of appellate courts are not to be employed in nullification of their mandates, they are uniformly held to be entitled to consideration in determining the effect of such mandates, even when the preparation of opinions is not legally required, and especially where it is. Last Chance Mining Co. v. Tyler Mining Co., 157 U.S. 683, 15 S.Ct. 733, 39 L.Ed. 859; National Foundry & Pipe Works v. Oconto Water Supply Co., 183 U.S. 216, 22 S.Ct. 111, 46 L.Ed. 157; Radford v. Myers, 231 U.S. 725, 34 S.Ct. 249, 58 L.Ed. 454; Northwestern Port Huron Co. v. Babcock, 8 Cir., 223 F. 479; Gloucester Water Supply Co. v. Freeman, D.C. Mass., 211 F. 349; United States National Bank of Vale v. Shehan, 98 Or. 155, 193 P. 658; Moore v. Chattanooga Electric R. Co., 119 Tenn. 710, 109 S.W. 497; Town of Fulton v. Pomeroy, 111 Wis. 663, 87 N.W. 831; Holbrook v. J. J. Quinlan & Co., 84 Vt. 411, 80 A. 339; Missouri Pacific R. Co. v. Conway County Bridge Dist., 142 Ark. 1, 218 S.W. 189.

In its opinion, it is the office of the State Supreme Court to record its considered findings upon the questions presented before it, and these include, in instances where, upon the record only one factual conclusion may be sustained, a declaration to that effect and the actual determination of the facts.

Nor is the application to the major portion of the Nebraska Supreme Court's sec-

ond opinion of the epithet, "dictum," either exact or decisive. Parenthetically, it may be remarked that that court itself has lately signified its appraisal of the criticised material of its last opinion in the Gillan case as controlling precedent. George v. Guarantee Mutual Life Co., 144 Neb. 285, 13 N.W.2d 176.

In Jacksonville, P. & M. Railroad Co. v. Schutte, 103 U.S. 118, 26 L.Ed. 327, the Supreme Court of the United States said: "As to the first question, we deem it sufficient to say that the Supreme Court of Florida has distinctly decided that in the case of this company, as well as the other, the statutory authority was complete. The point was directly made by the pleadings and as directly passed on by the court. Although the bill in the case was finally dismissed because it was not proved that any of the State bonds had been sold, the decision was in no just sense dictum. It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter. Here the precise question was properly presented, fully argued, and elaborately considered in the opinion. The decision on this question was as much a part of the judgment of the court as was that on any other of the several matters on which the case as a whole depended."

In Watson v. St. Louis I. M. & S. Ry. Co., C.C.Ark., 169 F. 942, 945, affirmed 223 U.S. 745, 32 S.Ct. 533, 56 L.Ed. 639, the court said: "The rule as to what does not constitute a dictum is that a decision of a legal proposition within the issues of the case, presented and argued by counsel to the court, and by the court, with its reasons therefor, decided, is not obiter, although the court could have determined the case on other propositions, but elected to settle that proposition."

And in Brown v. Chicago & N. W. Ry. Co., 102 Wis. 137, 78 N.W. 771, 772, 44 L.R.A. 579: "It is a mistaken opinion that nothing is decided in a case except the result arrived at. All the propositions assumed by the court to be within the case, and all the questions presented and con-sidered, and deliberately decided by the court, leading up to the final conclusion reached, are as effectively passed upon as the ultimate questions solved. Trustees v. Stocker, 42 N.J.L. 115. The judgment is authority upon all points assumed to be within the issues which the record shows the court deliberately considered and decided in reaching it. Quackenbush v. [Wisconsin & M.] Railroad Co., 71 Wis. 472, 37 N.W. 834; Pray v. Hegeman, 98 N.Y. 351. Nothing is obiter, strictly so called, except matters not within the questions presented,—mere statements or observations by the judge who is writing the opinion, the result of turning aside for the time to some collateral matter by way of illustration." See also: Union Pacific R. Co. v. Mason City & Ft. D. R. Co., 199 U.S. 160, 166, 26 S.Ct. 19, 50 L.Ed. 134; Kessler v. Armstrong Cork Co., 2 Cir., 158 F. 744; New York Central & H. R. R. Co. v. Price, 1 Cir., 159 F. 330; Scovill Mfg. Co. v. Cassidy, 275 Ill. 462, 114 N.E. 181, Ann.Cas.1918E, 602; Chase v. American Cartage Co., 176 Wis. 235, 186 N.W. 598; Spitzley v. Garrison, 208 Mich. 50, 175 N.W. 390; State v. Loveless, 62 Nev. 312, 150 P.2d 1015.

It is undoubtedly true that certain, indeed most, of the opinions just cited deal with cases in which the earlier deliverances under scrutiny assigned two or more distinct grounds for their final rulings, both or all of which argued for the same result. Yet, neither the discussion of the courts in the cases identified, nor, as it would seem, mature logic requires their limitation to such instances. The obvious submission to, and consideration by, the ruling courts of the critical factual issues, and their unequivocal and explicit decision of them have commanded attention and recognition of the appellate courts' rulings as the final determination of the specific issues raised.

The attention of the court has been directed by counsel for Mr. and Mrs. Gillan to certain authorities supporting an asserted general rule that a finding of a particular fact is not res adjudicata in a subsequent action, where the finding not only was not essential to support the judgment, but was made in favor of the party

against whom the judgment was rendered, and, if allowed to control, would have led to a result different from that actually reached. Granted its maximum conceivable operation, that theory could be effective to defeat the society's contention that the final opinion of the Nebraska Supreme Court is res adjudicata in favor of its position. See also Reams~v. Clopine, 121 Neb. 86, 236 N.W. 158, leading to the same result. It does not follow, however, that it would necessarily deny to that opinion any consequence at all in this case, particularly its elimination of the otherwise controlling effect as res adjudicata of the lower state court's judgment and its affirmance on appeal.

And while the cited rule is fairly well documented (see note 133 A.L.R. 850, et seq. and supplemental citations), its employment quite generally, though not invariably, occurs in the application of findings and judgments or decrees of trial courts from whose operation the prevailing party has no right of appeal or review for the mere correction of judicial reasoning. The situation is somewhat otherwise in reference to the opinions of appellate courts, against which even the successful litigant may, and not infrequently does, direct a motion for the withdrawal or modification of the opinion.

Finally, the rule is not invariably recognized and applied. See the foregoing note, and particularly, Jacksonville, P. & M. Railroad Co. v. Schutte, cited elsewhere herein.

One finds it difficult to imagine a more deliberate and purposeful and even courageous ruling upon individual facts and legal issues than is reflected in the Nebraska Supreme Court's final opinion in the Gillan case. Its language is replete with words of decision and is not confined to mere legal reasoning. Its purpose to rule and decide upon actually controverted matters is revealed in almost every paragraph of the opinion. And this court is reluctant, unrealistically to deny effectiveness to that purpose or to the legal and factual determinations that issued from it.

Undoubtedly, the opinion, in relation to its final order on the particular appeal in the action then before that court, presents a situation quite unusual in reported cases. But that circumstance ought not to nullify the studied ruling of the court upon sharply controverted points. Its explicit and detailed final deliverance upon those points, ought to control the implicit inferences from the mere history of the case.

■ It is uniformly recognized that serious mischief would result from the relaxation of the application of the principle of res adjudicata and the setting at large of causes and factual issues theretofore litigated and determined. It is equally true that ultimate facts once put in issue, litigated and conclusively determined are no less finally adjudicated, because it may thereafter be determined that they were mistakenly decided. The question, nevertheless, remains of the finality of the actual determination of fact in the first instance.

If it be thought that the Nebraska Supreme Court's sole purpose and service involved the substantial withdrawal of its earlier opinion in the same case, then it may be answered that, if the issues it ultimately decided were not before it for solution, that course might very easily have been pursued in a simple memorandum opinion substantially to the effect of the final two paragraphs of its last opinion. Only the conviction that the issues both of fact and of law discussed and decided in the final opinion, were actually submitted to, and really before, it could have prompted it to the course it pursued. It will not be supposed by this court, thereby gratuitously to have published a mere corrective legal essay for the guidance of itself and the legal profession in future cases. It will be considered rather to have decided issues remaining in the case before it, perhaps with precisely the present situation in mind. In fact, in fixing attorneys fees in the earlier opinion the future as well as the past impact of the litigation was expressly regarded.

The position in similar circumstances of the Nebraska Supreme Court, respecting its own previous opinions, ought to be highly instructive. An indication upon the point may be discerned in Macke v. Wagener, 106 Neb. 282, 183 N.W. 360. In an

earlier phase of that controversy (actually, a different case, vide 106 Neb. at pages 290, 291, 183 N.W. at page 360) the maker of notes and a mortgage executed by him and his wife in settlement of possible liability for slanderous remarks about the mortgagee therein, had sought in equity to obtain a cancellation of the notes and mortgage upon the two grounds of want of consideration and coercion in their procurement, and had obtained the relief prayed for in the District Court upon the sole ground of want of consideration, the District Court expressly finding that there was no proof of coercion. But, upon appeal in the earlier proceeding, though the decree of the District Court cancelling the notes and mortgage was affirmed, the Supreme Court had expressly overturned the findings of the District Court and had held that, though the notes and mortgage were not without consideration, they had been executed under moral pressure amounting to coercion or duress; and had preserved to the mortgagee the right to sue at law for slander. See Macke v. Jungels, 102 Neb. 123, 166 N.W. 191, L.R.A.1918C, 121. Thereafter, pleadings were filed as in an action at law and trial was had to a jury which returned a verdict for a nominal sum against the alleged slanderer, from the judgment in which the appeal in Macke v. Wagener, supra, was prosecuted. One of the issues then presented was upon the action of the trial judge in allowing the submission to the jury of the decree of the District Court in the earlier equity case. The Supreme Court held that course to have been erroneous. Its syllabus follows:

"On the trial of an action for slander, a decree in an equitable action between the same parties canceling certain notes given by defendant in attempted settlement of the damages growing out of such slander, on the ground that they were 'without consideration,' was received in evidence over objections of plaintiff; such decree had been affirmed, but upon the ground of undue influence, the Supreme Court expressly holding that they were not without consideration. Held, that the objections should have been sustained.

"By introducing in evidence, upon rebuttal, the opinion of the Supreme Court, plaintiff did not waive his exception to the ruling of the trial court admitting the decree.

"The decree was immaterial and incompetent evidence, and had a tendency to mislead the jury, and its admission was therefore prejudicial error calling for a new trial."

And in its discussion, the court says directly upon the effect of its former opinion:

"The evident purpose of the statement to the jury, and offer of the decree in the equity suit, was to get before the jury the fact that the judge then presiding had found that there was no consideration for the notes and mortgage, as a basis for the argument that plaintiff had suffered no damage. *True, the opinion on appeal upset this finding*". (Emphasis added.)

If it be thought that a distinction lies in the fact that the original Macke case was a suit in equity in which the reviewing court had the prerogative of a trial de novo, it must be remembered that the factual determination of that court is not less finally persuasive when it is rendered in an action at law upon the ground that under the determined law only one finding of fact may be sustained, and that in direct contrariety to the inference necessarily issuing from the jury's verdict.

▪ The society's satisfaction of the judgment of the District Court of Fillmore County, Nebraska, adds nothing to the effect, if any, upon this action which, without such satisfaction, the judgment itself would have had. The payment was not a voluntary act, but was made under the compulsion of the judgment.

▪ Upon the whole history of the case in the state courts, and with due consideration of the final opinion therein of the Nebraska Supreme Court, this court rules that the proceedings in that case are not effective, upon the principle of res adjudicata, to intercept the consideration upon their merits in this case of the essential allegations of the society's complaint as amended. It goes no farther than that.

▪ Nor, in the opinion of the court, is the abandonment by Mrs. Gillan of her previously held insurance under a policy issued by Prudential Life Insurance

Company (presumably Prudential Insurance Company of America) an element sufficient to bar the society from the relief it now seeks. Upon the evidence the court finds as a fact that she had such a policy, and that subsequent to the issuance of the original policy involved here she allowed it to lapse, and at that time she believed her policy with the society was in full force and effect. However, the findings of this court also include the statements made by Mrs. Gillan in questions 2(b) and (c) of part II of the application and a finding that the society had no knowledge of, and did no act to cause, her abandonment of the Prudential policy, and a legal conclusion to the effect first announced in this paragraph.

In view of the testimony and evidence and the record before the court, it is not considered necessary to, and the court does not, reach or announce a conclusion as to whether the second opinion of the Nebraska Supreme Court is operative under the principle of res adjudicata in favor of the society. No declaration upon that point will be embodied in the court's conclusions of law whose preparation is directed.

The court, however, does presume to record at this point, its clear recognition of the rule, uniformly acknowledged, and declared in Reams v. Clopine, 121 Neb. 86, 236 N.W. 158 (which has already been cited), that the principle of res adjudicata is applied, if at all, in consequence of the pleadings and judgment in earlier litigation rather than upon the basis of the opinion of a reviewing court.

However, in harmony with the legal reasoning in the final Gillan opinion and in the later case of George v. Guarantee Mutual Life Co., 144 Neb. 285, 13 N.W.2d 176, the court upon the pleadings and the evidence before it now announces findings and legal conclusions to like effect with those set out in the second Gillan opinion, including particularly, though not exclusively, its conclusion respecting the status as warranties, of Mrs. Gillan's challenged answers, and the making and materiality of all of the several alleged answers and the falsity of the answers (however, only as to questions 6(a), 7(d), 7(e), 8(d) and 8(f) ), and the society's reliance upon them in its issuance of its original policy with its total disability and double indemnity provisions; in its reinstatement of that policy on its lapse in 1929 for nonpayment of premium; in its approval of Mrs. Gillan's disability claim and its payments thereon; in its waiver of the payment of premiums during total disability; in its issuance of the converted policy, and generally in its dealings with the policies, and each of them, prior to its repudiation of liability thereunder. Conclusions in harmony with those of the Nebraska court are made upon the impeachment of answers in insurance applications made a part of insurance contracts by agreement and within the provisions of the statute, and the inadmissibility of parol evidence in such situations. Generally, and except as noted, the court's findings of fact follow the allegations of the complaint.

The relief granted will follow generally the prayer of the complaint, except to the extent that the denial of specific relief sought has already been announced, and will include and cover the adjudication of immunity from liability upon, and the cancellation of, the provision for double indemnity not at all involved in the state suit, as well as the provision for total and permanent disability benefits.

And upon a finding that the waiver of premiums under both policies was similarly induced by Mrs. Gillan's fraudulent representations and is, therefore, not operative, and that default in the payment of premiums has been made as alleged in the complaint, the society will be absolved from liability upon both the original policy and the converted policy of life insurance, both of which will also be cancelled. That cancellation will be effective immediately upon entry of the judgment. However, since it rests only upon default in payment of premiums, the court considers that, in consequence of the history of the litigation that has ensued, Mrs. Gillan ought to be allowed a reasonable period of time within which she may, by paying to the society all premiums upon the life policy then remaining unpaid, cause the reinstatement of the life policy. Accordingly, without impairing its immediately effective conse-

quence of cancellation of the life policy, the judgment will include a provision that, if within sixty days after its date Mrs. Gillan, being still alive, shall pay or cause to be paid to the society all premiums upon the life policy remaining unpaid at the time of such payment, the cancellation of the life policy included and contained in the judgment shall become inoperative and of no effect, and the life policy shall be restored to full force and effect.

Counsel for the society will promptly prepare findings of fact, conclusions of law and a judgment in accordance herewith, and submit the same for approval as to form to counsel for Mr. and Mrs. Gillan, and on such approval, to the court for signature and entry; or in default of approval, upon three days' notice in writing to counsel for Mr. and Mrs. Gillan, to the court for settlement.